(35 South. 821.)

No. 14,644.

FROELICHER v. OSWALD IRONWORKS, Limited.*

(Nov. 30, 1903.)

INJUNCTION—NUISANCE—OFFENSIVE OCCUPATION.

1. Acts which disturb physical comfort to an injurious extent may be restrained by the interposition of the courts.
2. An offensive occupation cannot be carried on to the very great annoyance of the one dwelling immediately near.
3. No one has the right to use his own land so as to render that about him in any degree

*Rehearing denied February 1, 1904.

111 LA.—23

useless. His enjoyments must have reference to the rights of others.
4. To the extent needful to prevent extreme annoyance, the decree as heretofore rendered by the district court is by the Supreme Court affirmed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Dominick Froelicher against the Oswald Ironworks, Limited. Judgment for plaintiff. Defendant appeals. Affirmed.

Solomon Wolff and Robert O'Connor, for appellant. Herman Michel and David Sessler (Henry Laurence Lazarus, of counsel), for appellee.

BREAUX, J. Plaintiff brought this suit to enjoin the defendant company from continuing its works at the present place, because the noise made and the smoke and the odor are a nuisance to the neighborhood, and it prevents plaintiff and his family from enjoying their home, which is situated near defendant's plant.

He also asks for damages because of the asserted noise in the sum of $2,500.

Plaintiff's home is situated at the corner of Morgan and Seguin streets, in the Algiers portion of New Orleans, and here he has resided about 12 years in a large, two-story frame house, worth about (plaintiff avers) $4,000. He occupies the lower portion of the building in connection with his saddlery business, and resides in the upper story.

Petitioner also avers, substantially, that property in the locality in which this property is located has depreciated of late in value in consequence of the asserted nuisance, which will be specially referred to later in our opinion. He also avers that the use of his property for business or residence is injured and destroyed.

Plaintiff's complaint, further, is that defendant has erected, upon property adjacent to his own, machine shops and boiler works; that defendant's predecessor bought property adjacent to his own from Charles Witherup, who, under an ordinance of the city council, was permitted to carry on the work of blacksmith thereon, and that defendant, taking advantage of this permit, erected large machine shops, to the injury of plaintiff, and to his discomfort and that of his

family; that defendant, the successor of those by whom these improvements were erected, sought from the city council the grant of a privilege to operate their shops; that this application met with the serious opposition from owners, residents, in the immediate vicinity, which resulted in their protesting by petition addressed to the council against that which they said "would prove an intolerable nuisance to the residents in the vicinity."

The application to the council was denied. Plaintiff avers this refusal among other things pertaining to the claim he sets up.

The allegations of plaintiff's petition are complete enough, and contained all that was needful to admit testimony offered.

Defendant sought to meet plaintiff's suit by averring that its business is no more noisy or otherwise irksome than any other business conducted in the vicinity of plaintiff's residence; that it avoids noises of all kinds as much as possible; that night work is rarely done at its shops. That the premises are kept clean and in perfect order, and the sheet-iron work it does is the best answer to plaintiff's contention that there are offensive odors on the premises.

Defendant's works front on Patterson street. Its shops do not extend from that street to the rear of plaintiff's lot, although its lot does adjoin that of plaintiff both in the rear of plaintiff's lot and on the side. There is a vacant space between these (defendant's) shops and plaintiff's property. Occasionally, in putting up boilers and tanks, this open space has been used or occupied in working on iron.

Defendant also owns the lot alongside of plaintiff's lot, and there, also, it was found more spacious and commodious for the work in the open air in putting boilers, tanks, and in hammering sheets of iron.

The noises produced by hammering on the sheets of iron used in boilers, tanks, and other works are doubtless loud and harsh, particularly when the hammering is done outside of the shops.

Defendant has a boiler producing steam it uses in its shops. In addition, it uses a forge for heating heavy sheets of iron before they are put in the machine that curves them, and in the yard they use two portable forges to heat rivets.

Plaintiff has cause to complain.

He was obliged to close his doors in summer when work was done in the lot adjacent to and alongside of his house, to keep out the vapor or steam from the outdoor furnace. It is an obstacle to his opening his windows. He has to endure the heat of summer without sufficient ventilation from his windows.

There was complaint of vibration felt, and that at night he and his family did not enjoy desired rest and quiet.

The noise and smoke were doubtless offensive, and there is no question but that too much noise and smoke are a nuisance. It is true that only an exceptional noise and disturbance are actionable. Still it is certain that acts which greatly disturb physical comfort may be enjoined, to the extent that they are injurious. An offensive and tortious occupation cannot be carried on to the great annoyance and grave discomfort of the one dwelling near.

It must, however, be very serious. While it may not, perhaps, be necessary for it to greatly injure health, it is sufficient if it greatly lessen and impair the enjoyment and happiness of home.

There is a test in matter of nuisance which the following question suggests: Is the discomfort one of mere fastidiousness or extreme refinement, as is sometimes seen, or does the nuisance interrupt the average comfort to which the individual has the right?

We do not refer to the very nice manner of living, but rather to a simple life, with the ordinary comforts. Considered in this light, plaintiff falls within the category of those who have a right to have an annoying noise abated, sufficient for peace and comfort to which the family ordinarily is entitled.

The theory to which some of the evidence tends cannot have our support to the extent asked. It has the appearance of being slightly extreme.

That plaintiff has become irritable, he says; that members of his family have become fretful, owing to the harsh noise; that there have been moments of slight infelicity in the family, as words are not heard or are misunderstood. Part of all this has the appearance of some exaggeration grow-

ing out, in all probability, of the noisome situation in which plaintiff was placed.

Plaintiff and some of his witnesses affirmed that, owing to the vibration and the consequent jarring, the house is not entirely in plumb; the foundations are unsettled; the windows do not shut as formerly; even the china and crockery move when on the table; and other ailments and troubles mentioned by these witnesses cannot all be laid at the door of the defendant. There is evidence that the vibratory movements of the earth at the particular place are not as imagined, and the odors as noxious as plaintiff evidently thought. There is smoke, but not enough to constitute nuisance as injurious as claimed.

It is conclusively shown, we think, that the noise is at times very great, and this presents the serious issue.

The noise produced caused actual physical discomfort. The plaintiff is entitled to solid comfort, and, to that extent that this is interrupted, relief should be afforded; but the injury must be real, and not fanciful. To the degree that it is real, there is ground for complaint—no further.

It is true, plaintiff's home is in the commercial and residential district. He is a harness maker, and must, in the nature of things, accommodate himself to his surroundings, provided, always, that the necessities of active industry do not become unbearable.

No one has a right to use his own (not even those engaged in the most industrious and worthy enterprises) so as to injure others about him. The use and enjoyment must have reference to the rights of others.

Whatever may be the condition in the neighborhood in which plaintiff lives, he should not be subjected to unendurable noise at his own home, which he has occupied for years.

A number of industrious mechanics at work in the open air, constructing boilers or tanks, or hammering sheet iron, may raise a noise, as in this case, that cannot be endured by those living immediately near. The evidence has at least served to prove, as relates to defendant, that its workmen are very industrious. The noise from their work has been in the nighttime, and some-

times even on Sundays, to an unendurable extent, the testimony shows.

We have noted that defendant has improved machinery; that he has sought to lessen the noise. Part of the up to date machines consists of a pneumatic calker for calking the boilers. The sounds from this machine are not in murmuring and suppressed tones. We gather from the testimony that it is very little less noisy than the hammering with hand on the boiler. Besides, there is considerable hammering done still, in putting up a boiler or tank.

"Pandemonium at large" is the impression created after reading the testimony of some of the witnesses—particularly that of plaintiff and the member of his family who also testified. We do not think it is as bad as they imagine, but there remains enough for complaint.

We are not hasty in arriving at the conclusion that the noise should be, to some extent, abated. The noises of industrial enterprises are not frequently characterized as nuisances. None the less, it must be held a nuisance when extreme and tortious.

Mr. Bishop, in his Non-Contract Law, § 418, has stated the idea with great force and clearness, looking to the interest of useful trade and occupation, on the one hand, and the convenience and comfort of the family, on the other.

"Two things," says the author, "essential to general prosperity and happiness, are useful trades, whereby people are supplied with things necessary in life, and healthful and peaceable dwellings.

"The courts, in administering justice between them, necessarily request each to lay aside something of what pertains to convenience and comfort, yet they permit each to stand so far on its own right not to be destroyed."

From this point of view, we think that the purposes the law intends will have been secured by affirming the judgment of the district court. We are not willing to go further. At the same time, we do not think, after serious consideration, that the plaintiff is entitled to less.

The amount of damages allowed was $500, in addition to restraining the defendant from carrying on noisy work on lots 15 and 16 of

the plot in evidence. We think this judgment does justice between the parties.

The demand of plaintiff for an amendment of the judgment on appeal is rejected. We are not of the opinion that the damages should be assessed at a higher amount, nor that the restraint should go further than before expressed.

For these reasons, the judgment is affirmed.