(51 South. 689.)

No. 17,637.

TUCKER v. VICKSBURG, S. & P. RY. CO.

(Feb. 14, 1910. On Application for Rehearing, March 14. 1910.)

*(Syllabus by the Court.)*

1. NUISANCE (§ 21*)—ABATEMENT—EVIDENCE.
    This is an action by plaintiff to obtain an injunction to abate a nuisance of smoke, noise, and vibration caused by the operation of a roundhouse by the defendants near the property of plaintiffs. While the noises complained of are annoying, and should be lessened as much as possible, still they do not appear to affect the rights of the plaintiff to such an extent as to cause the removal of the works of the defendant.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 55; Dec. Dig. § 21.*]

2. NUISANCE (§ 33*)—ABATEMENT—EVIDENCE.
    The evidence does not show the vibration to be of such a character as to interfere with a substantial right of the plaintiffs so as to order the removal of the works of the defendant.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 89; Dec. Dig. § 33.*]

3. NUISANCE (§ 3*)—ABATEMENT—SMOKE.
    While railroads as quasi public corporations enjoy certain privileges in reference to the emission of smoke from their property, still they should use every means at their command to lessen the amount of annoying smoke. While the neighbors of such a corporation cannot expect too much, still the railroad will be ordered to use approved methods to minimize any annoyance from its operation.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 10, 11; Dec. Dig. § 3.*]

4. NUISANCE (§ 33*)—ABATEMENT—NOISES.
    The testimony regarding the whistling noise is not such as to make up a case requiring the interference of the court.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 89; Dec. Dig. § 33.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by J. M. Tucker against the Vicksburg, Shreveport & Pacific Railway Company. Judgment for defendant, and plaintiff and interveners appeal. Reversed in part.

E. W. Sutherlin and T. C. Barret, for appellants. Wise, Randolph & Rendall, for appellee.

Statement of the Case.

BREAUX, C. J. This was a suit for the removal of a nuisance committed, it is charged, by the defendant company.

The roundhouse, and turntables and side tracks, spur tracks and switch tracks, against which the complaint is leveled, are situated at corner of Cotton street between Marshall and McNeil streets in Shreveport.

Plaintiff asks for a judgment for the removal of the works, coupled with an injunction restraining defendant from using the roundhouse and other houses, tracks, and other appurtenances.

Plaintiff and a Mr. Jordon and the interveners are the joint owners of valuable dwelling houses at or near the corner of Marshall and Cotton streets, fronting on the former street and on the latter. Plaintiff and his family occupy one of the houses fronting on Cotton street.

Other houses above mentioned are occupied by interveners or leased to tenants for residence and boarding houses.

Plaintiff sets out that, in operating the cars and the engines in and about the roundhouse, the soot, cinders, coal, and dust are unendurable; that the steam and smoke and soot roll into and around his dwelling house; they soil and stain his furniture; that the air is poisoned by the gases; and that odors and vapors from these works at this place are impure and detrimental to health.

Plaintiff, in addition, complains of the noises: Halloaing of the workmen, who work late at night and early in the morning. The screeching, rumbling, and bumping of the turntable add to the discomfort.

Plaintiff's suit creates the impression that plaintiff suffers all the ills which can be inflicted by an operating railroad near one's residence.

Plaintiff is not alone in his complaints. Four interveners, residents and property holders of Shreveport, joined him by intervening in the suit.

Defendants, on the other hand, it appears, under their charter powers, bought the roundhouse, turntables, and tracks, as well as the lot on which they are situated, long anterior to plaintiff's ownership of the lots and dwelling houses above mentioned. At the time that the improvements were made, there were few buildings near the roundhouse. It was nearly a vacant space.

Plaintiff and others, who have joined him in this suit owing to the increase in the population of the city and the activity of its people and the improvement in values of property, found it to their interest to buy property and construct buildings thereon in the vicinity.

The defendant, in making out its defense, shows that it meets with difficulty in finding a suitable place elsewhere within the limits of the city or territory adjacent on which to erect its works. Its contention is that the noises, and smoke, cinders, and other unpleasant annoyances are inevitable.

Defendant urges that it is a quasi public corporation and has the legal right under its charter to build and operate its road and appurtenances, roundhouse, and turntable.

These, in the main, are the defenses upon which defendant relies to defeat plaintiff's demand.

The case was tried before the court without a jury. The district court wrote a lengthy and well-considered opinion, rejected plaintiff's and interveners' demand, and dismissed their suits.

#### Statement of Facts.

Some time before suit was filed, the alleged nuisance was brought to the attention of the council.

That body, while recognizing a report of one of its committees regarding this alleged nuisance, to the extent of ordering it filed and approving it, took no further steps toward adopting a resolution for suppressing the asserted nuisance and toward giving effect to the representations of the committee.

On the trial of this case, a number of witnesses were heard. The preponderance of the testimony is with plaintiffs in regard to steam, smoke, and noise, and other alleged annoyances.

We deem it sufficient to state that beyond question the facts prove that plaintiffs are at times made quite uncomfortable by the causes sworn to by the witnesses for plaintiff. It is evident that the immediate vicinity of a

railroad is not a pleasant place in which to dwell.

The conclusion arrived at relieves us from the necessity of particularizing all the incidents detailed by witnesses, further than to state that plaintiff as a witness, in a spirit of fairness, we will state, limits the annoyance to the smoke and the noise, and his testimony creates the impression that if these were suppressed he would be willing to suffer some, at least, of the other annoyances of which he complains.

The following are others of the facts considered in discussing the issues:

On the property adjacent to the roundhouse, the buildings were of little value for considerable distance before plaintiff and interveners built houses on it, at dates recent as compared to the date the defendant or its predecessor had the roundhouse built.

The number of cars has greatly increased and the business quadrupled of late years.

The houses of plaintiff and interveners are at about 150 feet from the roundhouse and appurtenances.

The noises consist, among others, of a piercing whistle for probably half an hour, which is trying to the nerves of a nervous person.

The witness who described circumstantially this piercing whistle did not at first know its cause, but he added, it was in not having enough pressure of steam to close the valve.

The testimony shows that there is at times a drumming noise.

The local superintendent of the defendant company was appealed to several times by property owners to put an end to the asserted nuisance.

His answer was that the complaint would receive proper attention. He stated, also, that the defendant bought other property upon which to erect improvements, and as a result these improvements would afford some relief.

Engineers and other employés of the defendant testified in regard to the noise and smoke, and said it was the unavoidable noise of running a railroad train or engine. They testified particularly about the whistling noise before mentioned.

It is in place to state that the original road was constructed under Act 228 of 1853.

The defendant, in opposition to the charges of nuisance brought by plaintiff, invokes the fact that it occupies this property in accordance with law, that it is engaged in the legitimate business of operating a railroad, and that without noises, vibrations, and smoke a railroad cannot be operated.

### Discussion and Judgment.

There are unquestionably noises, coming from defendants' roundhouse, that are exceedingly annoying at times.

We, none the less, have arrived at the conclusion that plaintiff is not entitled to relief in so far as relates to these noises. We have before noted one of the sounds comes from the engine and boiler. It seems that at a certain point, while steam is generated, this escaping steam will make a subdued noise, which will continue until the pressure of the steam against the valve closes the valve and closes the steam's escape, and thereby the noise is stopped.

The sound emitted, the witnesses state, is a hissing subdued sound, exceedingly trying to a person of a nervous temperament.

The witnesses of the plaintiff did not know the cause of the sound and suggested no relief.

The defendants explained the cause of this hissing noise, and said that it is unavoidable; that it is less than similar noises emitted from the engines and boilers of other railroads.

The subject of noises has heretofore received our attention. State ex rel. Denis v. Judge, 105 La. 731, 30 South. 101.

Although the cause of the noise in the cited

case supra was different from those complained of in the present case, it was the story of disagreeable and annoying noise.

We could not grant relief in the cited case for reasons stated in the opinion; but we added that noises from bells or other sources should be reduced to a minimum, if possible, as they disturb needed rest and quiet. It was not shown (and the same is true in this case) that the noise caused damage of any kind. Although part of it should perhaps have been suppressed, under the facts and circumstances, the consummation devoutly to be wished was not exacted.

In another case (Froelicher v. Iron Works [Algiers] 111 La. 705, 35 South. 821, 64 L. R. A. 228), the questions of noises and smoke were carefully considered, and the defendant was condemned to pay an amount.

In this case, it was proven beyond all question that the noise was loud and long. It caused illness in plaintiff's family; not only the noise was offensive, but the vibrations caused the walls of his dwelling house to fall, and they drove plaintiff from his home.

As relates to the noises, this case is not as strong and convincing for plaintiffs as the last-cited case. We have not found in the pending case that the noises are tortious, unreasonable, and unwarranted, although, doubtless, the inconveniences and annoyances and discomfort should be lessened as much as possible.

The noises, as developed by the testimony, do not appear to affect the rights of the plaintiffs to such a degree as to require the removal of all of defendant's works.

We take up for a minute the question of vibration, another of plaintiffs' causes of complaints.

As with the noises, the weight of the testimony does not show that plaintiffs' legitimate rights have been interfered with by them to an extent that renders removal of the works of defendant necessary. The property has not been in the least damaged. At times, we take it, slight vibration is felt. This, under the circumstances, cannot be helped. Vibration is very common. It is often felt without causing the least uneasiness. It is at times pleasant—the vibrations of musical instruments, of a bell, of vocal cords, of molecules of the earth, of houses, and so on.

These do not of themselves give rise to damages; interference with a substantial right must be shown in addition to the vibration.

This brings us to the smoke and cinders from the roundhouse and engines.

This gives rise to a serious question; it is not all smoke—not a mere theory of plaintiff.

There is smoke from the engines, at work in hauling the trains or in switches, that cannot be suppressed. No demand is directed against the running engines on the road.

Plaintiffs assail defendants' right to operate the roundhouse, the turntable, and the appurtenant tracks and switches.

Having considered the respective rights of parties, we decline making the whole of the injunction perpetual. We are of opinion, however, that plaintiffs are entitled to some relief from the smoke emitted by the engines and boilers in the roundhouse and when going to or from the roundhouse.

The smoke escapes from the sides of the roundhouse between the upright boards of its surrounding walls. These openings between the boards should be closed. Flues and tunnels for the smoke to escape can be made. If that does not suffice, the walls of the buildings may be raised higher. As to the engines and boilers (we refer to those taken to and from the roundhouse and to the engines placed on the side tracks near the roundhouse to fire them or to cool them off), wooden or other walls will have to be constructed to a sufficient height to direct it up-

ward and keep it from the direction of the houses in question.

Science is credited with having discovered a smoke consumer or *appareil fumivore*. For all we know, it may not be possible to use one of these inventions. This is mentioned in the discussion in passing.

We do know that in one of the cities of this state there is among her public ordinances one which is directed toward preventing factories and railroads from smoking out those who live in the immediate vicinity. This ordinance provides that a wall shall be built 20 feet higher than the houses immediately around.

We have not overlooked the decisions, cited by learned counsel for defendant, holding that railroad companies in the nature of their industry have special privilege to make noises and raise smoke; that they are necessary incidents to the service. We do not hold contrary to that view. At the same time, we are of opinion that if a roundhouse and appurtenances emit too much smoke, and it can be checked, it should be checked, and some relief given to the suffering people who reside near. When it appears that a railroad company can provide against a nuisance, it should make the necessary improvement.

If only a little smoke escapes from the roundhouse and engines, there is no necessity of removing them. If volumes of smoke are emitted, as testified to by plaintiffs' witnesses, they will be abated by our decree, practically sufficient to afford relief.

The principle of the common and of the civil law, as well as the rules of morality, teaches that one should not use his own to the detriment of his neighbor. Neither must the neighbor exact too much. There should, if possible, be a medium. This it has been the purpose to find between these contending parties, one seeking to get rid of every vestige of annoyance, and the other to hold to ground it has owned since many years.

There must be some observance of the rule suggested by the words "to give and take."

The former should remember that they must put up with some annoyance; that a railroad company, even as relates to its roundhouse, turntables, and the like, is entitled to some right of immunity. Elliott on R. R., p. 811, § 1056.

While the defendant should bear in mind that grants of privileges confer no right to use in disregard of private rights; that in a populous part of a city greater precaution must be taken to avoid inflicting annoyances, discomfort, and distress than in the open country.

Only a few words before reaching the end:

This subject of nuisance, growing out of smoke and noises of transporting companies, gives rise to concern and causes thought. It is not in a satisfactory condition. The decisions throughout the country are not in accord by any means.

In some parts of Europe, it is in great part left to municipal regulation, under ordinance applying generally to the municipality.

In others, it is left to the common law and to individual suits.

In this instance, the municipality appointed a committee and received its report approvingly; it did not take the last step necessary to be effective by adopting a general ordinance.

There is another feature in this case attracting attention.

Those in charge of large industrial, transportation companies should not, when appealed to for relief, hold out a hope, as was done assuring those complaining that something will be done, and yet remain supinely indifferent.

It will not do to assure them that something will be done, and then remain content without making the least attempt at improving the situation.

Of course, transportation companies must not be taken by the throat and made to sur-

render to every demand; that would be shutting the wolf out at one door and admitting him at another.

On the other hand, in a suit for relief, the weight of the testimony should make it appear that everything in reason has been done to put an end to annoying and distressing smoke.

This has not been done, and under this decision something shall have to be done.

The defendant can remain where it is by applying up-to-date methods, or by the use of walls and flues, funnels, or other devices.

The smoke producing will be enjoined in some respects to prevent as far as possible the annoyance complained of.

The testimony regarding the whistling noise, owing to a slow valve on the engine or boiler, does not make up such a case as would justify injunction or removal.

The demand as to it will not be granted in this suit.

The law and the evidence being in favor of plaintiffs and interveners and against defendant, it is ordered, adjudged, and decreed that the judgment rendered in this suit is avoided, annulled, and reversed, except in particular last stated in this decree.

It is further ordered, adjudged, and decreed that the roundhouse and tracks leading into the roundhouse be so operated as not to cause volumes of smoke to expand to the houses of the plaintiffs and interveners, mentioned in their petition.

It is further ordered, adjudged, and decreed that the smoke nuisance complained of in the petition, emitted by the roundhouse and by engines and boilers leading into the roundhouse, be abated.

It is further ordered, adjudged, and decreed that defendant erect smoke walls or stacks, or adopt other effective devices necessary to prevent the spreading of the smoke to an injurious extent toward the houses before mentioned.

The injunction is made perpetual to the foregoing extent.

It is decreed that the complaint of plaintiffs and interveners directed against the shrill whistling noise of the locomotive and the slow valves on said tracks is dismissed as in case of nonsuit.

It is further ordered, adjudged, and decreed that plaintiffs' rights to recover further relief as relates to smoke or avoidable noises, as occasion may require, are reserved.

It is further ordered, adjudged, and decreed that in other respects the judgment appealed from is affirmed, except that defendant and appellee shall pay the costs of both courts.

### On Applications for Rehearing.

In the application for a rehearing, the defendant and appellant, in the alternative, asks us to change the judgment to allow defendant 90 days from the decree within which to comply with the requirements of the decree as to making alterations.

The delay is granted in accordance with defendant and appellee's prayer.

This change regarding time having been made by amending the decree, the application for a rehearing is refused, except as to the 90 days.

The application of plaintiffs and appellants for a rehearing is, also, refused.