19 So.2d 21

McGEE et al. v. YAZOO & M. V. R. CO.

No. 37276.

May 22, 1944.

Rehearing Denied June 26, 1944.

Wise, Randolph, Rendall & Freyer, of Shreveport, for defendant-appellant.

Turner B. Morgan, of Shreveport, for plaintiffs-appellees.

ROGERS, Justice.

This is a suit to abate a nuisance and to recover damages. Plaintiffs are eight married couples owning homes in Bossier City, a non-resident property owner, and the City itself. Defendant is the Yazoo & Mississippi Valley Railroad Company, a corporation organized under the laws of Louisiana and engaged in operating a railroad in interstate and intrastate commerce between Shreveport, Louisiana, and points east of the Mississippi River.

Plaintiffs allege that defendant is now, and has, been for the past several years, maintaining and operating a public and private nuisance on a 10-acre tract of land situated within the territorial limits of Bossier City, which tract of land defendant leased from Vicksburg, Shreveport & Pacific Railroad Company; that defendant is using the tract of land to operate what is known as a round house (although there is no house there), a fueling station, hostling point, and firing point; that the round house consists of a turntable from which a number of tracks lead off and on which a number of coal burning locomotives are kept at all times and that these locomotives continuously give off dense and obnoxious smoke, including gases, soot and cinders, particularly when steam is being raised; and that at times volumes of smoke, gases and cinders pour from the locomotives in heavy clouds.

Plaintiffs allege that the so-called round house is located from 600 feet to 1500 feet from their various properties which are situated on Colquitt, Adair, Wyche and Edwards Streets, and that the conditions complained of are injurious to their health, annoying to their comfort, and destructive to their property and to the health, comfort and property of other citizens of the town.

Plaintiffs allege that the smoke, soot, cinders and gases emitted from the coal burning locomotives of the defendant settles on their property, infiltrating into their homes and polluting the atmosphere; that they are forced to keep all their doors and windows facing the so-called round house and coaling station closed in the summertime and they can not use their front and side porches, hang their laundry in their yards, and keep screens on their porches and windows because of the action of the smoke and gases; that their bedclothing is being ruined and that to maintain their houses in a livable condition they are required to carry on a continuous job of cleaning; that they are unable to keep the floors polished and their houses painted, and that at times they are unable to breathe without inhaling the obnoxious smoke, gases and soot emitted by defendant's coal burning locomotives.

Plaintiffs allege that although they complained to defendant of these conditions,

defendant failed to do anything to remedy them, which plaintiffs aver could be done by the use of modern methods and appliances.

Plaintiffs pray for monied judgments and for an injunction, mandatory and prohibitive, ordering defendant to remove its round house, coaling station and hostling point to some other site and prohibiting defendant from carrying on its operations at the present location.

In its answer, defendant admitted its use of the premises referred to in Bossier City for refueling and servicing its locomotives, as well as the use of the turntable located thereon in connection with its railroad operations, but defendant denied that in its operations it committed any negligent or unlawful acts or was maintaining a public or private nuisance. Defendant specially denied that no steps had been taken to prevent the discharge of smoke, gas, cinders or soot from its locomotives, or that it was failing to use modern methods in the operation of its property. Defendant averred, on the contrary, that it had done everything that could reasonably be done to remedy the situation. And defendant prayed that plaintiffs' demands be rejected.

Prior to the argument in the district court, defendant filed an exception of no cause or right of action to plaintiffs' demand for injunctive relief, and prayed that the demand be rejected. Argument was then had, briefs were filed, and the case was submitted. In due course, judgment was rendered by the trial judge rejecting plaintiffs' demand for a mandatory injunction but granting plaintiffs a prohibitory injunction "prohibiting the defendant from operating its business in Bossier City, Louisiana, in such a manner as to constitute a nuisance by the emission of smoke and cinders onto plaintiffs' property from its round house and coaling station." The judgment further awarded damages to the plaintiff, Helen I. Fish, in the sum of $73, to the plaintiffs Mr. and Mrs. C. M. Brown in the sum of $1,007, and to each of the married couples, constituting the remaining plaintiffs, in the sum of $750. After defendant's motion for a new trial was overruled, the judgment was signed and defendant applied for and was granted an appeal to this Court.

Defendant complains that the trial judge erred in the following particulars. First, in overruling the exception of no cause or right of action to plaintiffs' demand for injunctive relief; second, in granting recovery for "worry and inconvenience" in the absence of any demand for the recovery of such elements of damage and in awarding damages for "mental anguish" as sued for, in the absence of any proof of injury on which mental anguish might be based; third, in awarding damages for "paint and screens" in the absence of specific proof of the amount of damage to the paint and screens allegedly caused by the smoke, soot and cinders complained of; fourth, in holding that the operation of defendant's property in Bossier City constituted a nuisance which should be abated, and in granting an injunction prohibiting defendant from continuing the nuisance; fifth, in ordering defendant to devise a

remedy notwithstanding the fact that no remedy was suggested by the Court or by counsel and none was shown to be practicable by the evidence and defendant proved that everything had been done that could be done; sixth, in failing to reject plaintiffs' demands and to dismiss their suit.

We shall consider defendant's complaints to the rulings of the trial judge in the order of their statement.

■ First. Defendant's exception of no cause or right of action is based on the proposition that plaintiffs are not entitled to injunctive relief because having sued for monied judgments, plaintiffs thereby admit that the damage complained of is not irreparable, "but is clearly subject to be measured and established, and recovery could be granted (if there was liability) in dollars and cents."

The trial judge held that the position of defendant was not tenable, since the acts of which plaintiffs complain as constituting a nuisance are continuing acts; that if plaintiffs could not obtain an injunction to restrain such acts, their only remedy would be to file suits every year for the damage caused them by the wrongful and negligent acts committed by defendant during the previous year. We find no error in the ruling.

In Froelicher v. Oswald Ironworks, 111 La. 705, 35 So. 821, 64 L.R.A. 228, the Court, in considering the question of a nuisance caused by noise and smoke not only condemned the defendant to pay damages, but also restrained the defendant

from carrying on the work producing the noise and smoke.

■ Second. Defendant insists that in no event are plaintiffs entitled to recover damages for mental anguish or mental suffering since those elements of damage are allowed only in suits for personal injuries and not in suits for property damage. Defendant argues that its position is supported by the text of 25 Corpus Juris Secundum Damages, page 555, § 68, reading as follows: "Under ordinary circumstances there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his property." Defendant also argues that its position is announced and recognized in Wolf v. Stewart, 48 La.Ann. 1431, 20 So. 908. In the Wolf case, plaintiff sued for specific damages which he alleged he suffered because defendant added eight feet to an eight foot fence on the boundary line of their respective properties and also for $2,000 as "vindictive, exemplary and punitory damages" for the mental anguish caused by the addition to the fence. The latter demand was dismissed by the district court on an exception and the ruling was sustained by this Court, after which the appeal was dismissed for want of jurisdiction.

We do not understand that the Wolf case holds that damages for mental anguish cannot in any event be recovered in addition to property damages. As we understand the decision, all it holds is that the act alleged, in that case, was not such an act as could cause mental anguish for which damages could be allowed; that

the act of defendant in raising the height of the fence eight feet and his refusal to remove the addition to the fence under the conditions alleged was not actionable since no aggravated conduct or act of the defendant was set forth. But it is now well settled that damages for mental anguish or suffering are actual rather than exemplary or punitory. Bourg v. Brownell-Drews Lbr. Co., 120 La. 1009, 45 So. 972, 124 Am.St.Rep. 448. And that actual damages resulting from a wrongful act are not limited to the pecuniary loss sustained thereby. They extend also to the mental, as well as to physical suffering caused by the act. Byrne & Co. v. Gardner & Co., 33 La.Ann. 6.

■■ We see no reason why damages for mental anguish or suffering can not be recovered in addition to property damage. Mental anguish or suffering is a distinct element of damages and is not merely an incident to be taken into consideration in addition to a pecuniary loss suffered by reason of a wrongful or negligent injury to persons or property. Such damages are considered as actual or compensatory. Jiles v. Venus Community Center, etc., Ass'n, 191 La. 803, 186 So. 342. And they are of that kind that the estimate of them is left largely to the discretion of the jury or the court. Civil Code, Art. 1934.

In the recent case of Dodd v. Glen Rose Gasoline Co., 194 La. 1, 193 So. 349, 353, the plaintiff demanded the following damages: $2,500 for pain and suffering, $7,000 for the value of his home, and $2,500 for worry, discomfort and inconvenience because of the operation of a flare for disposing of waste gases from a gasoline plant operated by defendant near plaintiff's home. The district court allowed Dodd $650, which the Supreme Court raised to $1,500, saying: "The right to rest in peace and quiet in one's home and the impairment of the enjoyment by petitioners of their home give rise to the opinion of this Court that, while the award to the petitioner, Mrs. Dodd, is adequate, the award to the petitioner, Mr. Dodd, is inadequate and should be increased from $650 to $1,500."

It is true that the demand in that case was for worry, discomfort and inconvenience, while here it is for mental anguish, but worry and mental anguish mean about the same thing. No amount was awarded plaintiff for the physical damage done to his house, only because the proof failed to show that any such damage actually occurred. And injunctive relief was denied plaintiff because the original condition complained of had been remedied.

In the later case of Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222, the defendant oil corporation, which drilled two producing oil wells on a one-acre plot of ground dedicated as a cemetery, was held liable in damages because of its trespass for the mental anguish suffered by plaintiffs whose near relatives were buried in the cemetery.

We find no merit in defendant's complaint.

Third. There is no force in this complaint, which involves only questions of

fact. On the trial of the case thirty-eight witnesses were placed on the stand by plaintiffs and thirty-five witnesses were called by defendant. The testimony of these witnesses is contained in 405 pages of the transcript. As pointed out by the trial judge in his written reasons for judgment, most of plaintiffs' witnesses were the plaintiffs and their neighbors who were interested in abating the conditions complained of and most of defendant's witnesses were either defendant's employees or employees of other railroad companies, although a few of the witnesses were neighbors who apparently were not interested in the outcome of the case.

It is not feasible to take up and discuss the testimony given by each witness. The trial judge who saw and heard the witnesses reached the conclusion from all the evidence that the property of plaintiffs and their neighbors, especially as regards the paint and screens on the houses, suffered considerable damage from the smoke, soot and cinders emitted by defendant's coal burning locomotives. As shown by his written reasons for judgment, a personal visit made by the judge to a number of plaintiffs' homes shortly after the completion of the trial confirmed the testimony of plaintiffs' witnesses in this respect. The judge sums up the result of his visit in these words: "In numbers of the places visited I could push the screen wire full of holes with one finger and some of this screen had not been up more than two years. The paint also looked smoked and sooty, and on the inside of the screen porches the floors and furniture were covered with cinders that could come only from burning coal. The visit to these homes was unannounced, so nothing could have been done by the occupants to make the premises look worse. The screens on the home in which I live appear to be about the same quality as those on the houses visited, and the screens on our home have been up 18 years, painted one time, about four or five years ago, and appear to be in fair condition now."

We find nothing from our review of the testimony to cause us to reach a conclusion different from that reached by the trial judge.

Fourth. Smoke, soot and noxious gases may constitute an actionable nuisance although produced and carried on by a lawful business, where they result in material injury to neighboring property or interfere with its comfortable use and enjoyment by persons of ordinary sensibilities. There is no precise test applicable in all cases by which to determine whether smoke, soot or gas constitute a nuisance, but the question depends upon the circumstances of the particular case, and generally is a question of fact. 39 Amer.Jur. secs. 54–58, pp. 336–340.

The general rule governing the granting to an aggrieved party of injunctive relief to abate a nuisance causing substantial and material injury is stated in 61 A.L.R. at page 927 in these words: "While there is some confusion on the subject, due very largely to the influence of the facts of the particular case, it is a rule established by the weight of authority that,

where it is clearly shown that there exists a nuisance which is causing a material, substantial, and irreparable injury to nearby property owners for which there is no adequate remedy at law, the injured person, as a matter of right, is entitled to such injunctive relief as may be necessary to so ameliorate the conditions of which he complains to give substantial relief therefrom."

The trial judge correctly found from the evidence that the defendant railroad company is directly responsible for the creation and maintenance of the nuisance which is highly injurious to plaintiffs and their property. This being true, the nuisance should be abated and plaintiffs are clearly entitled to injunctive relief at least to the extent granted by the trial judge.

The identical facility, then located in the City of Shreveport and operated by the Vicksburg, Shreveport & Pacific Railway Company was the subject of similar litigation in a suit brought by J. M. Tucker against that company. The case is reported in Tucker v. Vicksburg, S. & P. R. Co., 125 La. 689, 690, 51 So. 689. Plaintiff in that case made no monied demand, but merely sought relief from the nuisance resulting from the smoke, soot, cinders and coal dust caused by the operation of the cars and engines in and about defendant's round house and appurtenances. Plaintiff asked for a judgment for the removal of defendant's works, coupled with an injunction restraining defendant from using its round house and other houses, tracks and other appurtenances. One of the defenses to the suit was that the plaintiff and interveners had erected their dwelling houses after the round house had been in operation for a number of years. The Court held this defense was not tenable. The judge of the district court rendered judgment in favor of defendant, but on appeal this judgment was reversed in part and a decree was rendered by this Court ordering that the smoke nuisance complained of be abated and that defendant erect smoke walls or stacks or adopt other effective devices necessary to prevent the spreading of the smoke to an injurious extent toward the house of plaintiff and interveners. The Court further ordered that the injunction sought by plaintiff and interveners be made perpetual to that extent.

Plaintiffs contend that since the filing of this suit new equipment and facilities have been installed at the so-called round house in an effort to satisfy plaintiffs and the railroad company's neighbors in Bossier City. These improvements to defendant's facilities consist of a sprinkler system to allay or eliminate dust rising while coaling the engines; smoke suppressers used in the fire box of engines while building or rebuilding fires, suppressers to arrest fly ash from the stacks of engines being serviced or standing by, an air compresser to help suppress smoke emitted by stand-by locomotives and a washing machine for use on the locomotives and boilers.

A number of defendant's witnesses testified that as a result of the installation and use of the foregoing improvements conditions with reference to the indiscriminate

discharge of smoke, soot and cinders at defendant's round house had been improved from 50% to 100%, which clearly indicates that conditions at the round house were bad before the improvements were made.

The trial judge, however, found from the evidence that the additional facilities installed by defendant as the result of the plaintiffs' suit were not sufficient to afford plaintiffs the necessary relief. Among other things, he found the methods of firing up the locomotives adopted by defendant and the installation of the fly ash eliminators under which the smoke stacks of the locomotives are kept while steam is being raised are. not wholly effective, because the locomotives could not be kept under the eliminators at all times, particularly when being refueled, repaired and turned on the turntable. The trial judge stated in his reasons for judgment that about two months after the completion of the trial of the case he visited the homes of some of the plaintiffs and found that the following conditions existed:

"The condition with reference to smoked-up paint and rotten screens could have been caused before the trial of the case, but the cinders or fly ash on the floors, furniture and window sills evidently got there very shortly before the visit, because all the homes visited appeared to be as well kept as possible under the conditions. So what defendant has done in the way of improvements has not eliminated the smoke, soot and cinders. I am not convinced that everything has been done that can be done to remedy the con-

ditions of which complaint is made. Not being a practical railroad man, no suggestion is offered, but defendant ought to think of a way to abate the nuisance."

Fifth. Defendant's expert witnesses testified in substance that as the result of the installation and use of the additional facilities the round house operated by defendant in Bossier City is more efficiently operated and better equipped with modern appliances than any round house operated by eight or nine great railroad systems of the country. From which defendant argues that defendant has done everything that can be done to eliminate the omission of smoke, soot and cinders in the operation of its round house. But, as pointed out by the trial judge, the conditions of which plaintiffs complain with reference to smoke, soot and cinders remains practically unchanged notwithstanding the installation of the additional facilities in defendant's round house. The so-called smoke suppressers and fly ash suppressers now used by defendant do not prevent smoke and fly ash from invading plaintiffs' properties. Defendant complains that, although the trial judge has instructed defendant to abate the nuisance, neither the trial judge nor plaintiffs have suggested what defendant can do other than that which it has done in order to comply with the judge's instruction. The trial judge has properly stated that it is for defendant and not for the court to ascertain and apply the remedy for the nuisance.

Plaintiffs, in Article 15 of their petition, suggest that defendant could abate the nuisance by constructing a round house

building with a central smoke eliminator or dispenser and by the use of a filter or soot traps, and plaintiffs' counsel in examining the witnesses further suggested the change of fuel from coal to oil or the use of Deisel engines. Defendant's expert witnesses testified that Deisel engines are not in general use on railroads operating in the west and midwest and that it would not be practical to restrict the use of the particular engines serving at the Bossier City round house to Deisel engines. These witnesses also testified that the conditions complained of by plaintiffs would not be improved by using oil instead of coal for fuel. But as stated by the trial judge, while this might be true, certainly burning oil would not produce any cinders or fly ash which plaintiffs claim accumulate on floors, window sills and furniture. It appears from the testimony of these witnesses that it is the custom of railroad companies to build round houses in the north and other places to protect their employees from the cold, but they do not consider that it is necessary to build round houses in this part of the country. The custom followed by railroad companies in this respect is explained by the statement made by H. E. May, shop engineer of the Illinois Central System, residing in the City of Chicago, one of defendant's witnesses, to-wit: "If I could stay down in this country I don't believe I would want anything around there. It is pretty nice around there. We build round houses in the north and other places so our men can keep warm. We do not feel it is necessary here." Mr. May also testified that it would not help the situation to

attach a tall central smoke stack to a round house because the substance contained in smoke is solid and being solid must fall to the earth.

While undoubtedly a round house building would protect the employees of the railroad company from the effect of cold, heat or rain, it would seem to be clear that such a building would also serve, to some extent at least, to prevent the spread of the smoke and soot emitted from locomotives fueled and refueled in the building.

It would also appear, viewing the matter from a common sense standpoint, that a smoke eliminator attached to a tall central smoke stack would further prevent the spread of smoke or soot from locomotives serviced in the round house.

In the case of Tucker v. Vicksburg, S. & P. R. Co., 125 La. 689, 51 So. 689, the Court pointed out how a condition similar to the one existing in this case might be corrected. In that case the Court ordered, among other things, that the defendant erect smoke walls or stacks, or adopt other effective devices necessary to prevent the spreading of the smoke to an injurious extent toward the house of plaintiff and interveners and the defendant was allowed ninety days within which to comply with the decree. In commenting on the suggestions offered by the Court for the improvements of defendant's facilities in the Tucker case, defendant in its brief in this case makes the following pertinent and obviously correct statement: "Evidently the defendant followed the suggestions of the court in this respect and no further action

was taken in the case. This is made manifest by the fact that the facilities continued to be operated at the Lake Street site by the V. S. & P. Company and subsequently by its lessee, Y. & M. V. Company, from the time of the decision of the case in 1910 until 1933, when there was not sufficient space for the necessary operation and the facilities had to be moved to a ten acre tract in Bossier City, owned by the V. S. & P. and under lease to the Y. & M. V., which property was adjacent to the railroad proper."

If the predecessor of the defendant railroad company in the Tucker case was able to follow the suggestions of the Court and thereby remove the nuisance complained of in that case, we see no reason why the defendant railroad company in this case could not adopt similar protective measures or find some other means for abating the nuisance to plaintiffs' property for which it is responsible.

▬ "The construction of a railroad, and its operation in the usual mode, certainly do not constitute a nuisance per se; but it is also true that railroad construction or equipment by reason of surroundings or the manner of operation may prove to be a nuisance as a matter of fact. * * * The quasi public character of railroads does not relieve them of liability; and if they have done acts which result in nuisances, they are in no different situation than an individual proprietor. The location of yards, terminals, shops, coaling stations, etc., is a matter which admits of a wide latitude in choice of sites, and therefore the courts are less inclined to relieve railroad companies from the results of nuisances committed in and about them than from those arising in the operation of the road proper." 20 R.C.L., Nuisances, sec. 69, pages 454, 455.

▬ Sixth. The suit involves questions of fact. The trial judge, after hearing the parties and making a personal inspection of the premises, found the facts in favor of plaintiffs. His findings should not be disturbed unless they are clearly erroneous which we do not find to be the case. The defendant is without right to permit smoke, soot and cinders to be emitted from their coal burning engines in such a manner as to injure plaintiffs and their property, and the injunctive relief granted by the trial judge should not be disturbed.

For the reasons assigned, the judgment appealed from is affirmed.

ODOM, J., takes no part.