This is a suit to abate a nuisance and to recover from the defendant $250 as a fee for the attorney for plaintiffs. The plaintiffs are Louis C. Fos and his son, Edward L. Fos, who jointly own the double residence in which they live at 3234 Fourth Street in Harvey, Jefferson Parish, La. The defendant is Evans Thomassie who owns and operates an establishment known as "The Midway," a place at which sandwiches, light comestibles and drinks of all kinds are sold, sometimes within the building but usually to customers seated in automobiles standing on the grounds of Thomassie adjacent to the building in which the foods and drinks are prepared. Some of the witnesses apply to the place the familiar name "Pig Stand."
Plaintiffs allege that in the operation of his business, the defendant, Thomassie "makes use of mechanical devices, which make unreasonably loud noises which disturb, annoy and prevent your petitioners and their families from enjoying the proper rest, either during the day or during the night," and they further allege:
"(4) That the noises emanating from the mechanical devices, employed by the said Evans Thomassie in his establishment known as the Midway make unreasonable and excessive noises and of such a character to cause actual and mental discomfort and annoyance to persons of or dinary sensibility."
In connection with their claim for a fee for their attorney, plaintiffs allege:
"(6) That your petitioners have been put to the expense of employing counsel to abate the nuisance and a recovery should be allowed against the said Evans Thomassie for $250.00 for counsel fees. * * *"
Plaintiffs pray that the said Thomassie be perpetually enjoined from "using mechanical devices which make unreasonable and excessive noises at The Midway * * *" and that they recover judgment against Thomassie in the sum of $250.
Thomassie filed an exception of vagueness and at the same time an exception of no cause of action, which latter exception was directed at that part of the position which sets forth a claim for an attorney's fee.
A temporary restraining order was issued under which Thomassie was required to "temporarily refrain and desist from using mechanical devices which make unreasonable and excessive noises * * *." However, when the matter was tried on its merits, the restraining order was recalled and annulled and there was judgment dismissing the suit at the cost of plaintiffs. They have appealed.
The establishment of Thomassie and one other place referred to as a small "canteen" seem to be the only commercial businesses in that neighborhood, such other buildings as are nearby apparently being occupied as private residences. It is admitted that Thomassie's establishment operates on a twenty-four hour basis each day except that it is completely closed during one day of each week. The complaint of plaintiffs is directed solely at an electrically *Page 404 
operated loud speakers which has recently been installed outside the Midway building itself and which is operated by a so-called "musical" instrument known as a juke box which is inside the main building. Patrons of the establishment, seated in their cars, are "entertained" by the noises which emanate from this loud speaker.
[1] There is no doubt that if there is a substantial interference with the rights of plaintiffs to the peaceful use of their premises and to such rest and quiet as may be expected in such a neighborhood, and if their interference is not merely temporary but obviously will continue unless prevented by judicial process, there is a right to the injunctive relief prayed for. The Supreme Court in McGee v. Yazoo M. V. R. Co.,206 La. 121, 19 So.2d 21, 25, in setting forth the general rule on the subject adopted the following from 61 A.L.R. p. 927:
"* * * 'While there is some confusion on the subject, due very largely to the influence of the facts of the particular case, it is a rule established by the weight of authority that, where it is clearly shown that there exists a nuisance which is causing a material, substantial, and irreparable injury to nearby property owners for which there is no adequate remedy at law, the injured person, as a matter of right, is entitled to such injunctive relief as may be necessary to so ameliorate the conditions of which he complains to give substantial relief therefrom.' "
The Court said too that in determining just what constitutes a nuisance the facts of each case must be investigated. Let us see then what are the facts here.
It is conceded by defendant that shortly after he had caused the installation of the loud speaker, complaint was made to him by one of the plaintiffs, and that he gave orders that the volume of the loud speaker should be reduced and that it should be entirely cut off each night at 11 P.M.
Plaintiffs admit that for a very short time after the complaint was made, the volume of the loud speaker was reduced, but they maintain that very soon it again became an unbearable annoyance and that it could be heard at all hours of the day or night.
The District Judge found that as it was at first operated it constituted a nuisance. He said:
"The Court is of the further opinion that prior to the complaint * * * that a definite nuisance was created, and that the operation of the juke box with the loud speaker attachment in the manner which said equipment was being operated prior to the said complaint was a definite nuisance and prohibited the peaceful enjoyment of the property of the residents in that vicinity. * * *"
He said, however:
"* * * that through the efforts of the respondent herein the said nuisance was abated, and at the time of the filing of the suit no nuisance was created, * * *."
We commence then with the realization of the fact that the defendant, himself, in effect conceded that as the juke box was operated when originally installed it was objectionable and justified complaint by the nearby residents and that the Judge too felt that as it was then operated it constituted a nuisance.
Mr. Louis C. Fos, one of the plaintiffs and the father of the other, says that he is 66 years old and for sometime has been under the care of a physician who told him to take "plenty of rest"; that his residence is about 90 or 100 feet away from the Midway and that at any hour of the day or night loud and unharmonious noises issue from the loud speaker and can be heard at least 500 feet or 600 feet away. His son, Edward L. Fos, also a plaintiff, corroborated his father's statement as did Mrs. Edward Fos, who lives with her husband in the joint residence.
Many other witnesses testified. Jeffrey Henry Falterman, who testified on behalf of plaintiff, was of the opinion that the loud speaker constituted a definite nuisance. He owned property about 450 or 500 feet away but did not live in it.
Carlo Taravella says that he lives next door to the Fos residence and about 400 feet from defendant; that the noises which came from the loud speaker constitute a definite nuisance both day and night and *Page 405 
he said that at 3 o'clock on a particular morning which he identified, he had been awakened by the terrific noise coming from the loud speaker.
Nelo LeBlanc says that he lives about 300 feet from the place. He hears the noises plainly but they do not annoy him, though they do annoy his wife.
Mrs. Manuel Aguilar says that she lives about 50 feet from Fos, and that the noises were so annoying that she investigated to make certain that they came from the loud speaker, and having made the investigation she testified:
"This is the thing that stops us from sleeping at night."
She also heard the noises at all hours of the night and identified a particular morning at 3 o'clock as a time at which she had been awakened by the noises of the loud speaker.
Mrs. Edward L. Fos said that her rest was disturbed many times; that sometimes the noises were very loud and that she heard them at any hour of the day or night.
Many witnesses testified on behalf of defendant. Mrs. Agnes Foret, an employee of defendant, said that she went to work at 5 o'clock each evening and worked until 2 o'clock in the morning; that during the night the loud speaker was permitted to operate until 11 o'clock but that at 11 o'clock she, herself always "pulled the plug" and stopped it from operating. She said that the loud speaker was "no louder than a radio in your home." She testified that usually the patrons remained in their cars and did not come into the building but liked to be entertained by this "music" coming from the loud speaker.
Henry Davis, a night employee of defendant, worked from 1:30 to 9:30 each morning. He said too that the loud speaker was always cut off at 11 o'clock at night and he particularly denied that the speaker had been operated at 3 o'clock on the particular morning on which two of plaintiffs' witnesses stated that they had been awakened by it.
Amos LeBlanc, a mechanic employed by defendant, says that the speaker was always cut off at 11 o'clock at night; that it was never loud but operated at a volume which would not disturb anybody and that at a distance of 50 feet from it only if you paid "strict attention" could you hear what music it was playing.
Wallace Davis said that he was a customer and was in the establishment at all hours of the night from 5 until 2 or 2:30 o'clock in the morning; that the loud speaker plays only loud enough for you to hear it when you are standing underneath the horn. After denying that he was an employee of defendant, and after saying that he had no interest, he finally admitted that he "helped out" Thomassie and said: "I am supposed to go to work for Mr. Thomassie."
Lee Barrois said that he was not employed by defendant but was in the establishment about four nights a week from 7:30 to 12 o'clock and that the loud speaker had such a low volume that you could not hear it in the Men's Room, 30 feet away.
Mary Jones, the yard girl, commonly known as a "B" girl, says that the loud speaker does not play loud enough to disturb anyone.
Richard White, the Assistant Cashier of the First National Bank, said that he was familiar with the establishment and that he didn't think the loud speaker had sufficient volume to disturb anyone, but it developed that at the request of defendant he had made a special test in order to testify on behalf of the defendant. In fairness to him, however, it must be stated that he said that he had heard the loud speaker at other times and that it seemed to him that the volume at other times had been at about the same level as when he made the test.
Salvador Guarino said that he was a frequent patron in defendant's establishment; that he was not there at any special hour but was there "every day at all hours." He made special tests in order to say whether the loud speaker could disturb any of the neighbors and said that he walked in front of the house of one of them only a short distance away, three or four times, and that "you couldn't hear it at all." He admitted that he was a very good friend of Thomassie. On his first *Page 406 
examination he made no reference at all to Mrs. Aguilar, who had testified on behalf of plaintiffs. He says that he forgot all about what he had to say concerning Mrs. Aguilar, and then he was put back on the stand to give testimony in impeachment of Mrs. Aguilar, and he said that he had had a conversation with her about this loud speaker and that "she said that she can't hear it, but that she is only going to testify because Mrs. Fos is a friend of hers * * *."
Mrs. Thad Anderson said that she lived a little closer to the establishment than the Fos residence and that the noises did not disturb her. She admitted, however, that on one morning at about 5 o'clock the loud speaker had awakened her husband but that he "did not complain about it." On cross-examination, Mrs. Anderson admitted that she and her husband were friendly with Mr. Thomassie and that they used Thomassie's property to bring wood and coal into their house, but that they could have made a gate on their own property if they had wanted to.
Mrs. H.Z. Datin, testifying on behalf of defendant said that she had lived close to the establishment until about two weeks before the trial; that the music which came from the loud speaker was "not very loud — not loud enough to disturb anyone." She said that she had heard a lot of people say that they could not even hear it outside but that she had heard complaints made three or four times. She said that when she first heard that the loud speaker was going to be installed, she had said:
"That ought to be pretty good music; I wish I could be close enough to hear it."
She denied emphatically that she had been employed by Mr. Thomassie at any time. She said that she had never worked there but finally admitted; "I work around the place," made the further admission "I give a hand serving the place," and then denied that she was paid or that she received any tips.
We have quoted at length from the testimony of the various witnesses because we are convinced from the testimony of most of the witnesses for defendant that they were violently prejudiced in favor of the defendant and that the testimony given by most of them was entirely unreliable. As we have shown several of them denied that they had any interest in the matter and then admitted either that they were employed or that they "worked around" and "helped out." And others obviously tried to make it appear that only the lowest and most dulcet tones come from the loud speaker.
There are two facts which stand out predominantly and which impress us: (First) The trial judge found that originally the operation of the loud speaker constituted a nuisance, and (second) defendant by contending that at 11 o'clock he cuts off the loud speaker, in effect concedes that it would constitute a nuisance should he attempt to operate it after 11 o'clock as it is operated up to that hour.
As to the view of the District Judge that as originally operated the loud speaker constitutes a nuisance, we thoroughly agree with him but we think that the evidence clearly shows that after a very brief respite the neighbors were again subjected to the raucous and terrific noises which emanate from the so-called loud speaker.
[2] As to the defendant's contention that he cuts off the loud speaker at 11 o'clock each night, we have two things to say: (First) The record convinces us that on many nights it is permitted to operate at all hours, and (second) we know of no right in the operator of such an establishment to fix a time — to set a dead line — up to which he shall have the right to operate a nuisance if he discontinues it after that time. Why should he have the right to say when plaintiffs or the members of their families shall retire for the night? Why should he have the right to take the position that until that time (set by him) he may be permitted to so operate his machine as to disturb the peace and quiet of his neighbors?
[3, 4] We think that plaintiffs are entitled to the injunction prayed for. They are obviously not entitled to an award for attorney's fees. It is well settled that in such a case as this a plaintiff may not recover from defendant an amount which he may be required to pay to his counsel. *Page 407 
In Jackson v. Bouanchaud, 178 La. 26, 150 So. 567, 569, the Supreme Court exhaustively reviewed the authorities and said:
"The remaining question is whether the defendant, the seizing creditor, should be condemned to pay the fee of the plaintiff's counsel. We do not think so. There is no codal provision or special statute authorizing a plaintiff who prosecutes and maintains an injunction to recover from the defendant the amount paid his counsel as a fee. The general rule is that attorneys' fees are allowed for the dissolution of injunctions but not for maintaining them. This rule has been sanctioned by this court in many cases."
It is therefore ordered, adjudged and decreed that in so far as the judgment appealed from dismisses plaintiffs' suit for an injunction, it is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the defendant, Evans Thomassie, be, and he is, restrained and enjoined from using mechanical devices which make unreasonable and excessive noises at "The Midway, Midway Park, Parish of Jefferson."
In all other respects the judgment appealed from is affirmed, defendant to pay all costs.
Reversed in part. Affirmed in part.