## STATE OF FLORIDA v HOLLIS, et al.

### Case No. 41-90-1521-MM (Consolidated)

County Court, Monroe County

May 19, 1990

**OPINION OF THE COURT**

WAYNE M. MILLER, County Judge.

*ORDER ON DEFENDANTS' MOTION TO DISMISS*

THIS CAUSE came on to be heard upon Defendants' Motion to Dismiss in the above-styled causes, and the Court having considered same, finds as follows:

The facts are simply. The City of Key West has recently enacted an ordinance which prohibits the following:

"SEC. 55.06 Additional Sound Limitations.

(a) No person shall between the hours of 10:00 p.m. and 8:00 a.m., create, cause, or maintain at or from any business premises any

amplified sound which is determined to be plainly audible sound at or upon a receiving property, street, or sidewalk more than one hundred fifty (150) feet from the sound source."

The majority of defendants are bar owners or bar managers who have been cited for violations of the above enactment occurring in the downtown business district known as "Duval Street". The citations were all issued by City police who were 150 feet or more from the cited businesses.

The Supreme Court of the United States considered the First Amendment right to amplify speech in *Saia v New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948), and *Kovacs v Cooper,* 336 U.S. 77, 59 S.Ct. 448, 93 L.Ed. 513 (1949). In these cases, the Court noted that loudspeakers are indispensable instruments of effective communication. Consequently, restrictions on volume must be no greater than necessary to prevent disturbances from loud and raucous noises. The Court further cautioned that adequate guidelines must govern the enforcement of the statute lest "annoyance at ideas . . . be cloaked in annoyance at sound". *Saia v New York,* supra.

*Saia* and *Kovacs* establish that anti-noise ordinances must meet the strict tests of vagueness and overbreadth applicable to the regulation of speech. The principal vice of a vague or overbroad ordinance regulating noise is its deterrence of constitutionally protected speech.

It is a basic principle of due process that an ordinance is vague or overbroad if its prohibitions are not clearly defined. In order to pass constitutional muster, the enactment must: 1) give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so he may act accordingly; and 2) provide explicit standards for those who apply them, so as to avoid arbitrary and discriminatory enforcement. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. An overbroad statute reaches more broadly than is necessary to protect legitimate state interests, and then, is unconstitutional only if a limiting construction cannot be placed on it.

It is clear that the use of sound amplification equipment, within reasonable limits, is an aspect of free speech protected by the First Amendment. It is also clear that when the exercise of a First Amendment right infringes on legitimate state interests, a city may enact narrowly drawn statutes regulating the time, place, and manner of such activities. *Grayned v City of Rockford,* 408 U.S. 104, 33 L.Ed. 2d 222, 92 S.Ct. 2294 (1972); *State v Holland,* 132 N.J. Super 17, 331 A.2d

626; *State v Dorsett,* 3 N.C. App. 331, 164 S.E.2d 607 (1968); *Fos v Tomassie,* 26 So.2d 402 (1946, La. App.). With these standards in mind, we turn to the specific provisions of Section 55.06.

Subparagraph (a) of the ordinance restricts the time, place and manner of the use of amplified sound. It prohibits all plainly audible amplified sound emanating more than one hundred fifty (150) feet from the sound source as measured from any receiving property, street or sidewalk.

Receiving property is defined in section 55.02 as:

"Any lot, parcel of land, public space, institution, or dwelling unit onto which sound, not originating therefrom, is traveling."

Plainly audible sound is defined in section 55.02 as:

"Any sound for which the information content of the sound is unambiguously communicated to the listener, including (without limitation) understandable words, comprehensible musical rhythms, beat or cadence."

The City asserts the following justifications for the sound ordinance restrictions:

1) Residents of the city continue to be plagued by excessive noise created by amplified sound to the extent that such sound constitutes a nuisance.

2) Amplified sound originating from second story sound sources accounts for many noise complaints, and

3) The proliferation of outdoor speakers in commercial districts and of mobile sources of amplified sound on the streets and sidewalks has created increasing and excessive noise.

The ends which the city seeks to protect are proper. When a citizen is within the privacy of his home, the State has broad powers to safeguard his "very basic right to be free from sights, sounds and tangible matter" he does not want. *Rowan v U.S. Post Office,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). The legitimate interest of the state is greatly diminished, however, when the citizen is outside his home. In the public place of the city one is often required to divert his or her attention and path rather than ask the State to silence objectionable speech or reasonably amplified speech.

As the U.S. Court of Appeals, Fifth Circuit, stated in the case of *Reeves v McConn,* 631 F.2d 377 (1980):

". . . All sound amplification might well be incompatible with the normal activity of a purely residential area at 9:00 p.m. or on

**99**

Sunday morning, but it is quite compatible with the normal activity of a night club district at 9:00 p.m. or a public park on Sunday . . ." *Grayned v City of Rockford,* 408 U.S. 104, 33 L.Ed. 2d 222, 92 S.Ct. 2294 (1972).

It is clear, then, that the nature of the place and the pattern of its normal activities dictate the kind of regulation of time, place and manner that are reasonable. The crucial question, therefore, is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. As the Supreme Court stated in *Grayned,* supra:

". . . Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest. Access to the "streets, sidewalks, parks and other similar public places . . . for the purpose of exercising (First Amendment rights) cannot constitutionally be denied broadly . . . 'Free expression' must not, in the guise of regulation, be abridged or denied."

The place from which the amplified sound must be plainly audible is designated under 55.06(a), as the "receiving property, street or sidewalk". The place from which the amplified sound must originate is a business premises. In the cases before the Court, the ordinance has been enforced against local bars within the busy, noisy downtown district of the city common referred to as "Duval Street".

Precisely because the downtown district is already a busy and noisy place, even during the proscribed times, reasonably amplified speech is guaranteed a broad right to equal participation. There is probably no more appropriate place for reasonably amplified speech than the streets and sidewalks of a downtown business district. As the Supreme Court stated in *Grayned,* supra, quoting *Hudgens v NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976):

"Streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely. . . . The city may tailor its ordinance to reach those activities that actually cause, or immediately threaten to cause, the consequences it fears."

The harm city the City seeks to prevent is the disturbance of residents in their own homes, and patrons in private businesses within the city. The interest the City seeks to protect is admirable. Unfortunately, the application is too broad. There exists no compelling state

100

interest in protecting citizens from plainly audible sound emanating from businesses while those citizens are located on streets, sidewalks, lots, parcels of land or public spaces.

Therefore, the Court finds the application of Section 55.06 to the factual patterns of the cases presented is an unconstitutional exercise of police power and an abridgement of First Amendment rights. The definition of receiving property, as it relates to "lots, parcels of land and public spaces", and the inclusion of streets and sidewalks, are overbroad, and exceed the bounds of the compelling State interests sought to be protected. The enforcement of 55.06, however, as it relates to dwelling units as contained within the definition of receiving property, is a valid exercise of police power based on a compelling state interest.

Accordingly, the language in Section 55.06 as it relates to streets and sidewalks is unconstitutional as applied in these cases, as is the language of Section 55.02 defining receiving property as "lots, parcels of land, public space . . ." as applied. The remaining portions of the enactment will stand as a reasonable and valid exercise of police power.

It is, therefore

ORDERED that the noise ordinance cases filed against the above-named defendants are hereby dismissed.

ORDERED at Key West, Monroe County, Florida, this 19th day of May, 1990.