McBRIDE, Judge.
This suit, which has for its object the abatement of an alleged nuisance, was brought by a Pennsylvania corporation known as the Sisters of the Blessed Sacrament for Indians and Colored People, and thirty-two of its individual members, all nuns, residing in the convent operated by the corporate plaintiff in the City of New Orleans. The defendant appealed from the judgment rendered below to the Supreme Court of Louisiana, and that Court having determined (one justice dissenting) that it had no jurisdiction of the case, transferred the appeal to us. See 221 La. 559, 59 So.2d 883. The Sisters of the Blessed Sacrament for Indians and Colored People owns certain real property located at the corner of Palmetto Street and the lake side of Pine Street in the City of New Orleans, upon which is located Xavier University and a convent for the nuns.
The defendant, Louisiana Society for the Prevention of Cruelty to Animals, which we shall sometimes call 'S.P.C.A. in this opinion, owns the property on the opposite corner of Pine and Palmetto Streets, and it there operates facilities for the impounding of dogs and other animals, and maintains kennels and other necessary buildings for housing and destroying the animals.
The plaintiffs allege that the S.P.C.A. handles more than 700 dogs each month, and that both by day and by night the animals set up a continual noise, such as barking, yelping, and howling, which has the effect of causing the individual plaintiffs great annoyance, loss of sleep, and interferes with the plaintiffs in the proper use of the school and residence. It is also charged in the petition that various offensive and noxious odors emanating from the pound which become diffused in the air reach the convent of the nuns and Xavier University. The relief sought is a permanent injunction restraining the S.P.C.A. from carrying on its operations in the man-er in which they are now conducted, and from permitting the noises and offensive odors to reach the buildings of plaintiff corporation and the residence of the nuns.
The S.P.C.A. acquired its property at Palmetto and Pine Streets on April 28, 1926, and shortly thereafter embarked upon the operation of the pound, which business it has conducted on the premises up to the present day. The corporate plaintiff acquired its property in 1929 as vacant and unimproved ground and thereon erected buildings adjacent to the S.P.C.A.’s animal pound.
After a lengthy trial on the merits, there was judgment enjoining the defendant from operating the animal pound in such a manner as will cause annoyance, inconvenience, and loss of sleep to the plaintiffs, and from permitting noxious and offensive *298 odors emanating from the pound to reach the residence of the individual plaintiffs. In view of a plea made by defendant in its supplemental answer that its buildings can be altered, changed, and reconstructed in such a manner as to eliminate disturbance to plaintiffs, the trial judge granted the defendant a delay of ninety days within which to make the alterations to the buildings.
Two of the exceptions interposed by the defendant are reurged before us. One— that the petition fails to set forth a right or cause of action — was referred by the trial judge to the merits of the case. We perceive no merit in this exception and it is hereby overruled.
The other of the exceptions, which is in effect a plea of non-joinder of parties-defendant, was vigorously argued by counsel and warrants some comment. Counsel adopt the position that defendant operates the animal pound in behalf of the City of New Orleans, which, in the interest of public safety, health, and general welfare, is under the duty of performing the governmental function of removing lost, stray, and homeless dogs from the city streets. The argument follows that the 'City of New Orleans is a necessary defendant on the assigned premise that if the plaintiffs are to prevail, a judgment against the iS.P.C.A. would not affect the operation of an animal pound by the City of New Orleans, or some other authorized agency, on the same site. We are cited to several authorities which hold that no one should be condemned without hearing, and that every party who may be affected by the decree must be brought into the suit.
Section 1 of Act 225 of 1926, as amended by Act 98 of 1948, now LSA-R.S. 3:2735, provides:
“The duty of catching, taking possession of and impounding unlicensed, lost, stray, homeless or wandering dogs found in the streets of cities of over four hundred thousand inhabitants shall be delegated, in each of the cities, to a commission, which shall be composed of the members of the board of directors of an incorporated society domiciled in each of the cities and organized for the prevention of cruelty to animals; the -members of the board of directors of the societies shall be appointed by the mayors of the cities as members of the commission; the commission, in each of the cities, shall have full power to patrol the streets with a proper and suitable dog w-agon, to employ proper implements and agents and shall have the power to perform all such acts as may be necessary to efficiently and humanely catch and impound unlicensed, lost, stray, homeless, or wandering dogs as may be found on the streets of the cities.” (Italics ours.)
Pursuant to the Legislative mandate that cities of over 400,000 inhabitants shall delegate to a commission the duty of catching, taking possession of, and impounding unlicensed, lost, stray, homeless, or wandering dogs found in the streets, the City of New Orleans on March 31, 1948 adopted Ordinance 17,245 C.C.S., which regulates the ownership, possession, keeping, licensing, and anti-rabies vaccination of dogs. By its provisions-, the ordinance, which is comprehensive in scope and consisting of twenty-one sections, empowers the Louisiana Society for the Prevention of Cruelty to Animals to patrol the streets of the city-with suitable dog wagons, to employ agents, and to perform all acts necessary to effectively capture and impound all unlicensed and unattended dogs found on the streets or in the public places of the City of New Orleans.
The Louisiana Society for the Prevention of Cruelty to Animals is a non-profit corporation, organized under the laws of Louisiana, with its principal place of business located in the Parish of Orleans, and having for its objects and purposes, among other things, the prevention of cruelty to animals and the promotion of humane work.
To summarize the issue, the Legislature made it the mandatory duty of cities ' of over 400,000 inhabitants to delegate the duty of impounding and catching stray dogs to a commission organized for the prevention of cruelty to animals. While a *299 commission was never appointed by the Mayor, the City did confer on defendant, by the above mentioned ordinance, the powers enumerated in the Legislative enactment. Pursuant to the delegation, the Society has completely taken over the delegated function, has hired its own employees, has supplied its own equipment, and has provided an impounding establishment at the corner of Pine and Palmetto Streets, of which it is the sole owner. The City of New Orleans has construed the statute and enabling ordinance, and correctly so, as meaning that the authority to catch and impound stray dogs in New Orleans has been surrendered to the defendant society, and that the City has no jurisdiction or regulatory power whatsoever over it. The City, cognizant of the pend-ency of this suit, has not sought to intervene, nor has it evinced any interest in the proceedings. Whereas the City exercises no authority over the defendant or its employees, and has nothing whatever to do with the manner in which the defendant operates, we readily conclude that the City is not an indispensable party defendant. The exception was correctly overruled by the trial judge.
The testimony of the plaintiff witnesses on the trial of the case convinced the judge below, and it likewise convinces us, that the present manner of operation of defendant society’s establishment constitutes both a public and private nuisance. The testimony reflects that all of the individual plaintiffs who reside in the convent have for a long period of years been disturbed by the barking, yelping, whining, and crying of the dogs housed in the pound, and that their rest, sleep, and their hours of prayer and meditation have been continuously disturbed by the activities taking place on defendant’s premises. This circumstance directly interferes with the corporate plaintiff in conducting its university. It was testified to that at times it becomes necessary for the individual plaintiffs to place pillows or towels over their ears as a means to lessen or deaden the noise created by the animals, so that they might go about their duties and to sleep at night. Not only does the defendant society pick up stray dogs from the streets of the City, but it has also extended its activities to the populous portions of St. Bernard and Jefferson Parishes, and animals there captured are brought to the establishment at Pine and Palmetto Streets. Twice each week some of the dogs are dispatched by means of carbon monoxide gas manufactured by the running motor of an automotive truck. The executions of the animals are accomplished by attaching one end of a rubber hose to the exhaust pipe of the truck, the other end of the hose being attached to a pipe which leads into a chamber into which the dogs have been previously driven from the kennels. These mass executions take place at 5 :30 in the morning, and there results therefrom noisy commotion among the dogs, and in addition the noise of the heavy motor which supplies the carbon monoxide gas adds to the din. The record further shows that noxious and disagreeable odors, described as of a mixed chemical and animal character, emanating from defendant’s premises, are blown by the wind over towards Xavier University and the convent.
Succinctly stated the defenses interposed by the defendant, by way of answer, are:
(1) That it owned and operated its property some three years prior to the corporate plaintiff’s acquisition of its property;
(2) Laches on the part of plaintiffs;.
(3) That as the operation of the animal' pound is a governmental function of the City of New Orleans, the plaintiffs are without right or interest to interfere therewith by way of injunctive process;
(4) That the property is located in the- “]” Industrial zone, as established 'by the Comprehensive Zone Law (Ordinance 11,-302 C.C.S. of the City of New Orleans)-, and the business of operating an animal pound is no-t prohibited in the area.
The questions presented by the first and second defenses were passed upon by the Court of Appeal for the Second Circuit adversely to defendant’s contentions, in the case of Robertson v. Shipp, La.App., *300 50 So.2d 699, 705. The opinion of the court in that case reads in part as follows:
“The contention that because plaintiffs established residence near to that previously established by the defendant, and at a time when he continuously kept several dogs on and about his premises, they have no valid right to complain o>f the method and manner in and 'by which his business is being conducted, is not well founded. It is without merit for at least two reasons, viz.: (1) When plaintiffs established residences there, either because of the quality or quantity of the dogs, their conduct had not created such conditions as developed after the Graham dogs had been introduced there, and, (2) the right to-conduct a business in such way or manner as to amount to a nuisance may not be prescribed for. This very question was considered and adjudged by this Court in the case of Ellis v. Blanchard, La.App., 45 So.2d 100-104, wherein we ruled adversely to defendant’s contention therein and here. To support our ruling we cited Tucker v. Vicksburg, S. & P. Railway Company, 125 La. 689, 51 So. 689. The principle is discussed in 39 Am.Jur., page 476, § 201. It is said therein that with one exception the jurisprudence of all of the states is the same. The majority rule is against defendant’s contention in the present case.
******
“Because plaintiffs delayed appeal to the Court for relief against the conditions produced by the dogs, does not, in our opinion, amount to acquiescence in such conditions. They knew that defendant’s business had been conducted for many years in a manner not disturbing to them, and they indulged the hope that it would return to that status. Having endured the intolerable and highly discomforting conditions for a time sufficient to prove to them that they were permanent, naturally relief was sought by appeal to the Court.”
In the instant case it is not shown that the S.P.C.A. was prejudiced in any manner by the lack of complaints from plaintiffs. Some complaints were made, particularly to the yardman of the S.P.C.A., and other of its agents.
The right to maintain a public nuisance cannot be based upon prescription, nor can one be estopped by its laches- with respect to the suppression or abatement of public nuisances, particularly those affecting health, peace, and comfort. McQuillin on Municipal Corporations, 3rd Edition, Volume 6, page 570.
As to the third defense, our discussion of the issue presented by the exception of non-joinder of parties-defendant is applicable. The Louisiana Society for the Prevention of Cruelty to Animals, the delegate of the City of New Orleans, is a separate legal entity from the City, and by its charter is endowed with the power of suing and being sued.
But even if it could be said that the City of New Orleans was the actual operator of the animal pound, nevertheless, the plaintiffs could have directed their suit against the City.
“A municipal corporation no more than any individual or private corporation can maintain or cause a nuisance, and the same remedies exist, generally speaking, against a nuisance arising from municipal action as in other cases. * * * ” McQuillin on Municipal Corporations, 3rd Edition, Volume 6, § 24.62.
Counsel lay great stress on the fourth defense and argue that under the specific wording of the Comprehensive Zone Law of New Orleans, the endeavors of defendant are not prohibited, and whether the plaintiffs must suffer the inconveniences caused them by the Society’s activities is to be tested solely by the rules established by the Zone Law. The provisions relied upon are to be found in Section 8-thereof. The section ordains that in the “I,” “J,” and “K” Industrial Districts all buildings and premises may 'be utilized for any business permitted in the commercial district, or may be put to any use not specifically excepted in the section. Then follows a detailed list of sixty-two types of businesses which may not be conducted in any of the *301 three Industrial Districts. No mention is made of animal pounds. However, the section finally provides there is to be excluded from the districts:
“63. * * * those uses which may be obnoxious or offensive by reason of emission of odor, dust, smoke, gas or noise or vibration.”
. Counsel argue that the court can take judicial notice of the fact that all commercial and industrial pursuits are offensive in one degree or another to residents of the neighborhood. Their theory is that the concluding provisions of Section 8 merely prohibit industrial plants which may be obnoxious or offensive by reason of emission of odor, dust, smoke, or noise or vibration, when they only affect other industries, or in other words from an industrial viewpoint. They maintain that the condition of which the plaintiffs complain amounts merely to a “residential nuisance,” and that the plaintiffs are without right to have the alleged nuisance abated.
We do not agree with this contention. The unambiguous meaning of the provisions of the Zone Law alluded to is that any business or industry, not expressly prohibited, may locate in the Industrial Districts if not obnoxious or offensive as provided in the 63rd provision of Section 8. It would be fallacious to say that the 63rd provision excludes endeavors which are offensive only from an industrial viewpoint. A business in an industrial district, whether obnoxious or offensive to other industries, industrial workers, or residents of the neighborhood, is by the 63rd provision of Section 8 of the Zone Law prohibited from operating. If counsel’s contention were adopted, the result would be anomalous. For instance, if the contention is to prevail, workmen in a “J” Industrial District could complain of a business obnoxious or offensive by reason of the emission of odor, dust, smoke, gas, or noise or vibration, but a resident of the district could not be heard in such complaints. We can hardly believe that the Commission Council of New Orleans intended that Section 8 would have that import.
There is not the slightest doubt that the activities as presently conducted by the defendant society constitute a grave and serious nuisance and a menace to the health and welfare of the inhabitants in the vicinity and especially to the individual plaintiffs, who reside across the narrow street from the animal pound. It was testified to that there are at present thirty-six nuns residing in the convent. In 1935, three years after it was opened, there were only .eighteen nuns in residence. Then the dog pound was 'but a small and negligible operation; now, however, the activities have expanded and the volume of animals handled has increased to major proportions. Averting again to Robertson v. Shipp, supra, we find these pertinent observations :
“We would indeed be greatly surprised to learn that a congregation of as many as 50 or more dogs of any sort in small pens for hours, day and night, would not, from their fretting, barking and howling, create a nuisance as to persons living within 400 feet of them. It is a natural propensity of members of the canine family, under such restraint, to make known their discontent by vocal outbursts of no uncertain tone. Under such conditions, as clearly appears in the present case, their quietude is easily disturbed by the approach of strangers and passing motor vehicles. It generally occurs that in the beginning only a few join in the noise-making, but gradually others take part, and soon the whole number, or nearly so, make their contribution to the din.
* * * * * *
“'Cases involving nuisance due to the proximity of dogs are not new in the jurisprudence of this state. This Court in Talbot v. Stiles, La.App., 189 So. 469, affirmed judgment of the District Court that enjoined the defendant from continuing a nuisance caused by the barking, howling and yelping of dogs detained for medical and/or surgical treatment. Defendant in that case was a veterinarian. There were not near *302 ly so many dogs on hand at any one time as in the present case, but plaintiff’s residence was much closer to the pen of detention than are the plaintiffs’ in the present case.
“The Orleans Court of Appeal in Marks v. Luce, La.App., 1 Orleans App. 107, enjoined the defendant from keeping one dog that caused extreme annoyance, inconvenience and discomfort to the plaintiff.”
For the reasons assigned above, the judgment appealed from is affirmed.
Affirmed.