HERGET, Judge.
This is a suit for injunctive relief to abate a nuisance coupled with an action to recover damages.
Plaintiffs, H. Virgil Travis and his wife Mrs. Ethel Rutland Travis, are the owners of a grocery store and residence located across the highway from a sawmill, veneer and box manufacturing concern operated by defendant, Martin Brothers Container and Timber Products Corporation, in Rose- *831 land, Tangipahoa Parish, Louisiana. In this action Plaintiffs allege that the operation of Defendant’s plant results in the dissemination of sawdust and ashes over the premises of Plaintiffs making it impossible for Plaintiffs to keep their buildings and clothing clean; causing hazard to Plaintiffs’ health in that the operation of said Defendant’s plant is performed in such a way as to constitute an actionable nuisance, the abatement of which they are entitled to enjoin.
Defendant contends that the mill has been in operation for more than fifty years. It denies that the operation of the plant is a nuisance, maintaining that the health of none of the residents of the community is affected by the operation and contending that the dust, fumes and other foreign substances which are blown onto Plaintiffs’ premises are caused by cinders from train operations nearby or result from dust being blown from the highway near Plaintiffs’ home.
By stipulation of counsel the trial of the injunction was submitted on some 160 affidavits filed by the parties.
Plaintiffs offered affidavits of numerous residents in the area to the effect that the operation of Defendant’s plant was such that sawdust, trash, dust, soot and ashes were disseminated from the plant making it impossible for affiants to keep their houses and automobiles clean or freshly laundered clothes hung on the line to dry from being soiled.
Defendant submitted numerous affidavits, mostly by employees of defendant corporation living in the vicinity of Defendant’s manufacturing plant, to the effect that as a result of the operation of the plant they found no objection, nor was there any annoyance caused to them by the operation of the plant and that there was no unusual amount of soot or sawdust deposited on their premises; that the paint on their homes was not injured by any materials disseminating from Defendant’s plant in its operation of same; and that their clothes or washings hung on the line to dry were in no way soiled. Though Defendant filed more affidavits numerically disclaiming the complaints of Plaintiffs than Plaintiffs filed in support of their complaints of annoyances resulting from the operation of Defendant’s plant, such affidavits of denial were given by employees or relatives of employees of defendant corporation and it would appear that they would be biased in their information-given.
Following an examination of these affidavits the Trial Judge dismissed the rule for a preliminary injunction and referred the matter to the merits. Subsequently, following a trial on the merits, the Trial Judge dismissed Plaintiff’s suit for damages, and refused to grant an injunction. From these judgments Plaintiffs appealed to this Court.
In both the Trial Court and in this Court Plaintiffs affirmatively maintain that they have no desire to cause the removal of the Defendant’s plant from Roseland and that such motive in no way affects that action, but that they are seeking relief only to require that the Defendant’s plant be operated, as they maintain can be done, in such a manner as to eliminate the dissemination of the waste materials resulting in the damages, which they seek to avert.
Considering first the question of injunctive relief, we are convinced from a reading of the affidavits filed by Plaintiffs without question it is shown that the operation by Defendant of its plant in the manner in which it was being operated at the date of the institution of Plaintiffs’ suit was such as-to result in the dissemination of debris, sawdust and other substances into the atmosphere causing considerable discomfort, annoyance and inconvenience not only to the Plaintiffs but to many residents of the surrounding area. From the action of the Defendant itself we are convinced that the nuisance complained of by Plaintiffs was factually shown to exist when Defendant,, through its manager, conceded that subsequent to the institution of this suit certain' *832 changes were made in the operation of the mill which had curtailed the dissemination of the foreign materials into the air to the extent of some ninety per cent. Furthermore, from the Trial Judge’s reasons in deciding the case it is apparent at the date of the filing of the suit he was of the opinion that the operation of Defendant’s plant was such as to result in a nuisance hut he was further of the opinion that such operation had been corrected to eliminate the complaint of nuisance; however, in his written reasons for judgment in favor of Defendant and against Plaintiffs he taxed the costs of the suit against Defendant for the reason that the nuisance was abated only after the filing of the suit, and reserved “ * * * to plaintiff the right to seek injunctive relief if the defendants fail to operate the incinerator with the jets slanted downward as it is now being operated.” We are of the opinion that Plaintiffs were entitled to judgment enjoining Defendant from the operation of its plant in such a manner as to disseminate into the atmosphere sawdust, trash, dust, soot, ashes, smoke, fumes, bits of wood, debris and other foreign material.
From the testimony of the employees of Defendant it is apparent that the operation of the plant resulted in the dissemination into the atmosphere foreign substances; from their testimony it is equally apparent that the dissemination of such foreign matters into the atmosphere can be eliminated. According to their testimony the operation which disseminated into the atmosphere the foreign substances resulted from the installation some two years prior to this suit and the use thereafter of four conveyor or blower systems, one of which systems removes material from the chipper; one of which removes all dry material from the plant into a loading system, transferring said material to cars on a railroad track; another of which picks up waste material, sawdust from any number of saws, and which material is conveyed to a cyclone attached to the burner area; and the fourth system starts inside the plant, picks up shavings and certain materials from other operations in the building which likewise goes to a cyclone attached to the burner area.
Clearly under the decisions of McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21, and Ryan v. Louisiana Soc. for Prevention of Cruelty to Animals, La.App., 62 So.2d 296 Plaintiffs are entitled to in-junctive relief restraining Defendant from the operation of its plant in such a manner as to constitute a nuisance, the evidence being clear that Defendant is responsible for the creation and maintenance of the nuisance in the dissemination of such foreign materials into the atmosphere, it being apparent that sawdust and burned materials are constantly diffused into the atmosphere by Defendant’s operation.
As stated hereinabove, coupled with Plaintiffs’ action for injunctive relief was a claim for damages to the gutters, the roof, the paint job of their home and to their health.
Defendant filed an exception of no cause of action to the claim for damages of community property on the contention that the husband not having been a witness on the trial of the case no cause of action was proven. This contention is without merit inasmuch as the husband is one of the petitioners in the suit and, as such, is the only one for whom judgment can be rendered insofar as damages to community property, but the mere failure on his part to be a witness at the trial of the case, his absence having been explained because of illness, has only the effect of going to the proof of the claim and not the cause of action for same.
The Trial Judge found that there was no evidence substantiating the contention that the health of either of the Plaintiffs had been impaired as a result of the operation of Defendant’s plant. We are in accord with his ruling thereon. Further, insofar as the claim for damages to the gutters and the roof, the evidence does not preponderate in favor of Plaintiffs, in that respect the proof being insufficient to conclude that the operation of Defendant’s plant had in any way *833 caused the damages complained of by Plaintiffs for these items. The evidence shows that plaintiff, Mrs. Ethel Rutland Travis, had contacted the manager of Defendant’s plant and informed him that she intended to paint the home of Plaintiffs and obtained from him a promise that during the period in which paint was being applied to the exterior of the home the blower systems of the plant would not he operated so as to disseminate into the atmosphere sawdust and burned material. Such operation was discontinued; however, during the course of the period when Plaintiffs’ home was being painted, without notice to Plaintiffs the blower systems were again activated resulting in sawdust and soot being blown onto Plaintiff’s home while same was being painted. There was' testimony offered to the effect that the cost of the paint job including labor and material was $755.79 for which Plaintiff seeks to recover, contending that as result of sawdust and dirt being disseminated into the atmosphere by Defendant’s operation the paint job on Plaintiffs’ home was completely ruined. Plaintiffs’ painter, who was a witness on the trial of the case, testified that the job which he did, despite the sawdust being imbedded in the surface, was a good one but that it was not as good as it would have been without sawdust being imbedded in the paint. Defendant placed a witness on the stand who testified that the paint job was a good one and that the sawdust had in no way affected same. The Trial Judge visited the home and personally made inspection of the paint job on the house and found that there was evidence that sawdust was imbedded in portions of the painted surface but that same was not visible from the street so that the aesthetic qualities of the house was not affected. Though Defendant had promised Plaintiff to refrain from the operation at its plant which disseminated into the atmosphere sawdust during the period required to paint her home, we are of the opinion that Plaintiff, upon the resumption of activities by the plant causing sawdust to he blown onto Plaintiffs’ home, was under an obligation to refrain from continuing to paint under such conditions; having full knowledge of the resulting damages which would be caused to the paint job, Plaintiff was under a duty to minimize such damages. We are, however, of the opinion that giving consideration to all of the evidence an allowance of ten per cent of $755.79, or $75.57 as damages to the paint job is warranted.
Accordingly, for these reasons the judgment of the Trial Court is reversed.
It is now ordered, adjudged and decreed that there be judgment in favor of H. Virgil Travis and Mrs. Ethel Rutland Travis against Martin Brothers Container and Timber Products Corporation enjoining said Defendant from disseminating sawdust, cinders and wood particles beyond the confines of its property.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, H. Virgil Travis, and against defendant, Martin Brothers Container and Timber Products Corporation, in the sum of $75.57. Costs to be paid by Defendant.
Reversed and rendered.