No. 9790
Orleans

MARY MOMAN, WIFE OF JAMES CARTER, v. NATALE MAESTRI, Appellant

(October 5, 1925, Opinion and Decree.)
(November 2, 1925, Rehearing Refused.)

(*Syllabus by the Court.*)

1. **Louisiana Digest—Landlord and Tenant —Par. 65, 66.**

A lessor guarantees the lessee against all the defects of the leased premises even in case it should appear he knew nothing of the existence of such defects and he is bound to indemnify the lessee for any loss resulting from those defects.

2. **Louisiana Digest—Evidence—Par. 344.**

An injury being proven, plaintiff must be believed as to the manner of its happening in the absence of any other reasonable hypothesis to account for it.

Appeal from the Civil District Court, Div. "G", Hon. Sam LeBlanc, Judge.

This is a suit for damages against the landlord, caused by plastering falling from the ceiling and injuring the tenant, of leased premises. The case was tried before a jury which failed to agree. Upon being submitted to the judge, judgment was rendered in favor of plaintiff. Defendant has appealed and plaintiff has answered praying for an increase of the judgment.

Judgment affirmed.

F. S. Normann, of New Orleans, attorney for plaintiff, appellee.

Woodville and Woodville, of New Orleans, attorneys for defendant, appellant.

OPINION

CLAIBORNE, J.    This is a damage suit by a lessee against her lessor.

Plaintiff averred that on November 27, 1922, she was occupying the premises No. 1549 Iberville Street owned by the defendant; that about eight o'clock in the morning

while she was down on her knees scrubbing the kitchen floor a large section of the plastering fell from the ceiling and struck her upon the middle portion of her back causing her serious internal injuries; that she remained in bed nine weeks under the constant care of her physician until discharged January 31, 1923; that after the accident she spit blood for sixteen days as the result of her injuries; that prior to the accident she maintained a large rooming house, that since the accident she has been unable to do the work necessary, and as a consequence has lost her business; that the defendant was informed of the dangerous condition of the plaster and promised to repair it and assured the plaintiff there was no danger.

Plaintiff itemizes her damage as follows:

Permanent disability and suffering $5000.00
Mental suffering _____ 2500.00
Loss of business _____ 2500.00

$10,000.00

The defendant admitted that he was the owner of the property, and that the plaintiff occupied the same as tenant, but denied all the other allegations of the petition.

The case was tried before a jury. After the exhaustive and learned charge, the jury failed to agree by the required majority. The case was then submitted to the judge who rendered a judgment in favor of the plaintiff for $500.00.

The defendant has appealed. In this court the plaintiff has prayed for an increase of the judgment to the amount claimed in her petition.

The plaintiff in this case and all her witnesses are colored people. Their testimony is a series of exaggerations, contradictions of themselves and of each other. Among the exaggerations is the statement made by plaintiff that after the plaster fell upon her she spit blood for sixteen days, she "could not say the quantity but it was a half of a bucket of blood" during the first two days and on the following days "a basin and a half or a basin full until the doctor checked it". One of her witnesses says she was "bleeding blood". The doctor who treated her for several days immediately after the accident was not examined as a witness. The doctor who was called in for a few days after the accident testified that she began to spit blood only on a day or two after he was called in; in fact the first visit he didn't think there was anything serious; he did not notice anything unusual about her condition.

One fact however seems to be established and admitted that is that the plaster in the kitchen fell. The plaintiff testifies to that. She is corroborated by several witnesses on her behalf and by a witness for defendant William Morgan.

There was a weak attempt made to show that the fall of the plaster was caused by a contractor employed by defendant, Ceasar Maestri, to do calcimining upstairs allowing a heavy board to fall upon the flooring upstairs and thus loosen the plaster, so as to make it fall. But the testimony to the effect that he was a contractor is not sufficient. If therefore the fall of the plaster was caused by the plank, it was done by an employee of defendant for whose negligence he is responsible. C. C. 2320.

We think it also proven that the plaster fell upon plaintiff's back somewhere below the left shoulder blade. The plaintiff swears to it. She is corroborated by the testimony of Dr. Gilbert who says that he attended her for a contusion and swelling upon her back near the left shoulder blade. In the absence of any other reasonable hypothesis to account for the contusion plaintiff must be believed. Simmonds vs. Southern Rifle Club, 52 La. Ann. 1114, 27 South. 656; The State ex rel. Margaret

Matt and Husband vs. Rightor, Judge, 37 La. Ann. 843; Boynton vs. Equitable Life Assurance Soc., 105 La. 202, 29 South. 490; Buechner vs. City of New Orleans, 112 La. 603, 36 South. 603; Succession of Landry, 114 La. 829, 38 South. 575; Lazarus vs. Friedrichs, 125 La. 619, 51 South. 663; Castilie vs. Cormier, 144 La. 640, 81 South. 210.

The last question is the amount of the injury. The testimony of Dr. Gilbert is that he treated the plaintiff at first for a contusion and swelling and afterwards for an affection of the heart; that the blow that the plaintiff received did not usually affect the heart or cause spitting of blood; that it might however develop or reveal a pre-existing condition.

John Dufrechon collector for defendant, says that he called upon the plaintiff once a month for more than two years for the rent, that he "mostly" found her in bed and that she told him she suffered from her heart or from indigestion.

Thomas Reid, a colored witness for plaintiff, painter and plasterer, testified that the plaster that fell was three to three and a half feet, "it could not be less than 2½ yards or two yards, I didn't measure it", and the ceiling was 14 feet high, he thinks.

Thomas Alexander, a West Indian, a plasterer hired by Reid, says that the ceiling was 14 feet high; he measured it, and the size of the plaster that fell was two to two and three-quarters yards; he thinks the plaster that fell would fill about three quart buckets and that it ought to weigh ten pounds a bucket or a total of thirty pounds.

On the other hand, M. Shaddinger, a contractor and builder for the last thirty years, a student of architecture for three years and a half in Tulane, testified that the plaster that fell in the kitchen was of very light material composed of hair, lime and sand; that he measured the size of the plaster that fell; that the patch was necessarily made larger for the purpose of the repairs; that the patch as repaired was 21 inches, not quite three square feet; he actually weighed a quantity of plaster equal to that which was replaced, that it weighed five pounds and four ounces.

The size of that which fell was smaller and lighter.

The size of the plaster as represented on the photograph corresponds with his measurements; that is made certain by the number of laths and the distance between each lath as shown by the photograph. He also measured the ceiling which is twelve feet 6 inches high.

We have therefore a weight of about five pounds, covering a surface of 20 inches, falling 12 feet six inches, and causing a contusion about four inches square followed by a disturbance of the heart and a spitting of blood. The plaintiff was retained in her bed as a precautionary measure. Her doctor says that the blow did not produce the heart trouble or the spitting of blood any more than a blow upon the chest would have produced; but that there must have been a predisposition on the part of the plaintiff.

The defendant's collector testified that she had admitted as much to him. Dr. Hudson who first examined her and her husband were not examined as witnesses. This is a circumstance against the plaintiff.

The plaintiff was detained in bed about twelve weeks. The judge allowed her five hundred dollars. We think the judgment should be neither increased nor decreased.

Her claim for loss of business was not sustained. Her rent was $45 per month, and her income from twelve roomers was $35 per month a loss of $10 a month.

She did not leave the house on account of the accident, but was notified to vacate four days before the accident.

The accident occurred on November 27th and she was evicted on December 15th next. There is no evidence of what she did afterwards.

Judgment affirmed.