LANDRY, Judge.
Defendant, WAIL, Incorporated, “WAIL”, a radio broadcasting corporation and sublessee of the second floor of a two-story building, appeals from judgment in favor of plaintiff, Mrs. Fred Nacol, “Na-col”, ground floor lessee, for the loss of personal property destroyed or damaged by *335 flooding allegedly due to malfunction of two air conditioning units installed on the upper story and presumably under defendant’s control. The owner of the premises, the Dougherty Estate, “Lessor”, was not made a party defendant by plaintiff in the main demand. WAIL, however, as defendant, third partied Lessor. . After trial on the merits below, judgment was rendered in favor of Nacol and against WAIL in the sum of $3,323.18, representing property loss by plaintiff. WAIL’s third party demand against Lessor was rejected and dismissed. Defendant has appealed contending the trial court erred in (1) casting defendant in judgment and alternatively (2) rejecting and dismissing defendant’s third party action. Nacol has answered the appeal praying for additional damages in the sum of $1,000.00 for mental pain and anguish denied by the court below. We affirm the judgment of the trial court in all respects except to amend it and allow Nacol judgment in the further sum of $1,000.00 for mental pain and anguish.
On April 8, 1966, Mrs. Nacol, lessee of the downstairs portion of a two-story building owned by Lessor and situated at the northwest corner of Third and Convention Streets, Baton Rouge, Louisiana, operated a retail jewelry store at said location. The upper floor of the building was then temporarily occupied by WAIL pending completion of permanent broadcasting headquarters at another location. WAIL’s occupancy resulted from an exchange agreement between WAIL and Radio Station WXOK wherein the two concerns traded facilities and pursuant to which WAIL assumed WXOK’s obligations under a lease between WXOK and Lessor covering the second story of the building in question. Upon opening for business on the morning of the date stated, a Monday, plaintiff discovered a considerable amount of water had leaked through the ceiling from the offices above over the weekend. As a result plaintiff suffered considerable stock damage both from the water and the collapse of a portion of the ceiling.
The trial court found the damage was caused by water emanating from two air conditioning units situated in the offices occupied by WAIL. He also found that pursuant to a lease agreement between Lessor and WXOK, which contract was assigned to WAIL with Lessor’s knowledge and approval, defendant WAIL assumed all liability for operation of the air conditioners. Appellant contends the trial court erred in rejecting its claim that Lessor, as owner of the premises, was liable for the operation of the air conditioners. Appellant alternatively contends the trial court erred in rejecting its third party demand against WXOK, who actually installed the units in question, inasmuch as WXOK was WAIL’s lessor and as such responsible for the operation of the units. In the further alternative, WAIL argues plaintiff herself was lessee of the upstairs portion of the building from Lessor and, in such capacity, responsible for the appliances in question. Finally, appellant claims the water did not issue from the air conditioners but rather from a ruptured water pipe which supplied the units, responsibility for which said pipe rested upon Lessor.
The evidence reveals subject two-story commercial property had been occupied under varying arrangements for some time. It further appears that, on occasions, certain tenants had been lessee of both the upper and lower floors. At one time Howard E. and Beulah G. Hatch were such lessees, having acquired a lease of the entire premises by written instrument dated November 18, 1952. The upper floor was subleased or assigned by Hatch to WXOK on December 16, 1952. Said lease contained an eight year option renewal which was exercised by WXOK extending the life of the contract to December 15, 1965. Said agreement contained provision for a further five year extension commencing “at midnight on the-day (sic) of December, 1965, upon the same terms * * * provided that as a condition precedent to the right on the part of subtenant to extend and renew this lease for said period of five *336 (5) years the subtenant shall notify the sub-lessors in writing * * * on or before two (2) months prior to the ■ — • - day December, 1965.” Fred Nacol acquired all Hatch’s rights to both floors on July 17, 1958, and thus in effect became the sub-lessor to the sublessee WXOK. Shortly thereafter Nacol commenced operation of a retail jewelry store on the ground level.
On September 30, 1965, Lessor wrote WXOK a letter referring to the five year option privilege commencing “December , 1965” and added:
“You have requested permission to extend this lease on a monthly basis under the same terms and conditions, which permission is hereby granted on behalf of the owners, represented by M. S. Dough-erty, Jr., Administrator.
It is expressly understood that this extension runs concurrently with the original extension terms as to maximum limits, namely; not more than five (5) years from December, 1965.
It is a further consideration of this extension, since the conditions as originally accepted have not been fulfilled by the subtenant, that the subtenant (WXOK or its assigns) agrees to vacate upon one hundred and twenty (120) days written notice from the landlord. * * * ”
To said letter WXOK, through its manager, T. L. McGuire, acquiesced in writing as follows:
“The conditions outlined above are entirely agreeable, and accepted on behalf of Radio Station WXOK, or its assigns.”
WXOK’s occupancy continued under the above arrangement until January 10, 1966, on which date WAIL assumed occupancy of the second floor pursuant to its transfer of all its assets to WXOK in return and exchange for WXOK’s transfer of its franchise and assets to WAIL, all of which was duly approved by the appropriate Federal Authority.
The Nacol lease of the entire property expired February 28, 1966, following which, by verbal agreement with Lessor, Nacol continued its lease of the first floor only, on a month to month basis.
It is conceded by all concerned that the damage in question emanated from the air conditions installed by WXOK during its occupancy of the upstairs premises. It appears, however, the precise cause of the mishap is not established by the evidence. It is shown, however, that on several previous occasions leakage occurred from the stoppage of a condensation pan drain pipe, which incidents caused only minor damage to the first floor ceiling. WAIL maintains, however, the damage in question resulted from a rusted out water pipe which supplied the “tower” with water used in the cooling process. According to WAIL, the pipe rusted from inside, which eventuality could not be foreseen.
Plaintiff maintains the doctrine of res ipsa loquitur is applicable and alternatively that WAIL was negligent in its operation of the units or in its failure to maintain them in safe operating condition. WAIL contends (1) Lessor alone is responsible for the operation of the units in question, and alternatively, (2) responsibility for the units rests in Nacol, and in the further alternative, (3) the doctrine of res ipsa loquitur is inapplicable, and in the final alternative, (4) if the rule of res ipsa loquitur is pertinent, WAIL has discharged its burden thereunder by showing that the damage resulted from the rusting of a water supply pipe which eventuality could not reasonably be foreseen, anticipated or prevented.
We are inclined to agree with appellant that in all probability the water escaped from a broken pipe rather than from overflow of the condensation pan. We so believe, first, because the quantity of water involved could hardly have been produced by normal condensation from routine operation. Secondly, it is shown that it was customary for WAIL’s employees to turn *337 off the units when the station was off the air at night. This conclusion, however, is of no comfort to defendant inasmuch as we find defendant had by contract assumed full responsibility for the operation and maintenance of the air conditioning units.
The record discloses that responsibility for maintenance and upkeep of subject property was initially imposed on the lessees thereof pursuant to the following provision in a lease to one T. H. Hamilton under date of September 2, 1949:
“All property of every kind which may be in or on said leased premises during the term hereof shall be at the sole risk of the Tenant, or those claiming under it.
The Tenant covenants and agrees to protect and save harmless the Lessors of and from any and all claims for injury to person or property by reason of any accident or happening upon the leased premises and on the sidewalks contiguous thereto, unless such injury or damage shall be sustained on account of the active fault or negligence of the Lessors.”
All leases and subleases affecting the second story of Lessor’s building subsequent to the Hamilton lease, clearly indicate they were accepted by lessees subject to the same terms and conditions of the Hamilton lease. It is clear beyond doubt that, by the terms and conditions quoted, Lessor, pursuant to the provisions of LSA-R.S. 9:3221, shifted to its lessees all responsibility for maintenance and operation of any machinery or devices placed on the premises.
Mr. Thomas J. McGuire, Manager of WXOK, stated unequivocally that when his station occupied the premises, it was with the distinct understanding WXOK was fully responsible for maintenance, operation and repair of the air conditioning units which were absolutely essential to operation of a radio broadcasting station. McGuire’s testimony also reveals that when the trade of stations was effected, all aspects of the swap were discussed with WAIL’s manager, Ralph Burge. We deduce from McGuire’s testimony that Burge was fully aware WAIL took the sublease from WXOK pursuant to the identical terms to which the former had previously agreed. It further appears that the so-called month to month extension resulting from Lessor’s letter of September 30, 1965, and accepted by WXOK was somewhat more than an ordinary monthly lease. In the first place, lessee was given the privilege to remain in possession for a period of approximately five years provided Lessor did not terminate sooner upon giving 120 days notice. In addition, Lessee was, required to afford Lessor thirty days written notice if Lessee decided to vacate. Obviously such terms were for the protection of WAIL which could be assured of at least four months occupancy, during which time it could presumably find new quarters if evicted by Lessor. It is further shown that during WAIL’s occupancy, the air conditioners needed servicing on two or three occasions and that, in each instance, WAIL paid the cost thereof. Finally, when WAIL terminated the lease, it did so in a letter to Lessor dated July 29, 1966, wherein it acknowledged that, in accordance with the terms of its agreement, 30 days notice of its intention to vacate was required and was being given as of that date. Considering all the circumstances noted, we find as did the trial court, that defendant herein contractually assumed full responsibility for the condition of the premises in question which resulted in the damage to plaintiff’s merchandise.
So finding, it is unnecessary to determine whether the doctrine of res ipsa loquitur is applicable herein or even whether defendant was negligent in any respect. We find no merit in the argument plaintiff is the lessor of the second floor. The record discloses that when the Nacol’s sublease of both floors expired on February 28, 1966, plaintiff became the sublessee of the first floor only on a month to month basis. From said date on, Nacol’s position was that *338 of lessee of the lower floor alone. As lessee, plaintiff’s rights arise from the provisions of La.C.C. Article 2695, pursuant to which the lessor warrants to his lessee the condition of the premises and is liable to his lessee for any damages resulting from defects or vices in the premises, even though lessor has no knowledge thereof, save only those defects which have arisen from the fault of lessee. Moman v. Maestri, 3 La.App. 228; Nickens v. McGehee, La.App., 184 So.2d 271, writ refused 249 La. 199, 186 So.2d 159.
 Considering defendant WAIL occupied the position of Lessor of the second floor under the circumstances shown, it is immaterial whether the damage resulted from an overflow of the condensation pan or a rusted water pipe. Either circumstance constituted a defect or vice for which the Lessor was liable to his lessee.
It is to be observed that plaintiff herein predicated its case in the trial court solely upon the alleged application of the doctrine of res ipsa loquitur and alternatively on the reputed negligence of defendant WAIL. However, the evidence adduced below clearly makes out a case in favor of plaintiff under the rule which imposes liability upon the lessor for damage to his lessee’s property resulting from a vice or defect in the leased premises, irrespective of negligence on the part of the lessor. This being the case, we have exercised herein the authority granted by La.C.C.P. Article 2164, and rendered judgment in plaintiff’s favor predicated upon La.C.C. Article 2695.
We also find plaintiff is entitled to recovery of the sum of $1,000.00, claimed for mental anguish attendant to her property loss. As we recently stated in Nickens v. McGehee, 184 So.2d 271:
“It is well settled that mental anguish is an item of damages which may arise from injury to one’s property as well as one’s person. McGee v. Yazoo & M. V. R. Co., supra [206 La. 121, 19 So.2d 21]. Such an element of damages may likewise originate from other actionable causes, such as invasion of privacy, slander, other similar tortious actions and from breach of contract. Appellants-Lessors, therefore, are clearly liable to plaintiffs for damages for mental pain and suffering incident to the destruction of the property of the latter, under the well established jurisprudence of our appellate courts.”
We can well imagine plaintiff’s shock and surprise upon opening the doors of her establishment and finding the floor covered with some two or three inches of water. It further appears plaintiff and her employees sloshed around in the water for several hours attempting to sort and salvage merchandise and clean the debris resulting from the water and fallen .ceiling.
Accordingly, the judgment of the trial court is amended and judgment rendered herein in favor of plaintiff Mrs. Fred Na-col, d/b/a Nacol Jewelers, and against defendant WAIL, Inc., in the full sum of $4,323.18, together with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
In all other respects the judgment of the trial court is affirmed.
Amended and affirmed.